THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, *Grantee and Assignee of the Burlington & Missouri River Railroad Company in Nebraska*, v. JOHN GUILD.

### No. 106.

VERDICT—*Set Aside When not Approved.* When the trial judge disapproves the verdict returned by a jury, for the reason that it is not warranted by the evidence, it is his duty to set it aside.

MEMORANDUM.— Error from Washington district court ; F. W. STURGES, judge. Action by John Guild against The Chicago, Burlington & Quincy Railroad Company, grantee and assignee of the Burlington & Missouri River Railroad Company in Nebraska, to recover for personal injuries. Judgment for plaintiff. Defendant brings the case to this court. Reversed. The opinion herein, filed June 4, 1896, states the material facts.

*W. F. Guthrie*, for plaintiff in error.

*J. W. Rector*, and *Powell & Powell*, for defendant in error.

The opinion of the court was delivered by

GARVER, J.: On July 21, 1890, John Guild, while engaged in shipping stock over the Chicago, Burlington & Quincy railroad, was injured in the freight yards of the company at Lincoln, Neb. This action was brought by him on May 22, 1891, in the district court of Washington county, to recover the damages alleged to have been sustained. Trial by jury being had, a judgment was rendered in the plaintiff's favor for $2,000, from which the company prosecutes this proceeding in error.

The circumstances under which the injury was received were as follows: At the time stated, Guild shipped three car-loads of cattle from Washington county, intending to take them to Chicago by way of Lincoln, Neb. His train arrived about midnight of July 21, at Lincoln, where it was run, with other trains, into the freight yards, in order that the several trains might be broken up, and other trains made up for the different points to which the several cars were destined. At this time a large number of cars of stock were in the yards, being handled by the switching crews and placed in their proper trains. Guild was an experienced stockman, about 60 years of age, who had frequently made shipments of stock. The cattle were shipped under a written contract which expressly provided that, in consideration of free transportation for one person on the stock train, such person should have entire charge of the cattle in the cars, and that the railroad company should not be responsible for any care of or attention to them in the cars, but only for their carriage without negligence. While in the yards at Lincoln, the night clerk of the company, in proper discharge of his duties, notified Guild that

47—KAN. APP.

some of his cattle were lying down in the car, and also suggested that they should be got up. The cars not being, at this time, connected with any train, Guild climbed upon the side of a car for the purpose of being better able to reach his cattle, and was in that position when a switch-engine coupled onto his cars and moved them to another part of the yards. In so moving them, they were carried past another car which stood upon an adjoining track, and so close to the car upon which Guild was that it struck him and threw him to the ground with sufficient force to fracture his left collar-bone and otherwise injure him. Owing to the darkness of the night, Guild did not see the car until it struck him. After receiving attention from the company's surgeon at Lincoln, Guild, changing his purpose of going to Chicago, proceeded the same night with his cattle to Omaha, where he marketed them the next day, and then immediately returned to his home in Washington county. At the time of the trial, November 22, 1892, Guild claimed that his left arm was permanently partially disabled by reason of the injury, and that he at times still suffered pain therefrom.

On the part of the plaintiff, it is claimed, and was so alleged in the petition, that the injury was caused by the negligence of the company in moving the car upon which he was rapidly and without warning along the tracks, and also in leaving the other car so close to the track on which the plaintiff's car was as to cause him to come in contact therewith. On the other hand, the railroad company claims that it was guilty of no negligence; that the injury was caused by the plaintiff's own want of care in climbing upon the car in the situation in which it was, and when he knew

that it was liable at any time to be moved in the course of the necessary switching to be done.

The jury found that the injury was caused by the negligence alleged in the petition. There is, however, no evidence tending to show that the switching crew had any reason to know or believe that the plaintiff was in a place of danger, or that injury was likely to result from so placing or moving the cars. It is significant that the jury also found that the defendant company was conducting its business in the usual and ordinary manner at the time the plaintiff was injured. The plaintiff was an experienced stock shipper, and doubtless knew of the manner in which cars were usually handled and trains made up in such yards. The shipping contract placed the care of the stock, while being transported, entirely upon the shipper. He was exclusive judge of the care and attention it required or should receive. Under the pleadings and special findings of the jury, it is only the conduct of the switching crew that is important; and, as to it, we think there is a very questionable showing of culpable negligence.

The evidence was mainly oral. The judge and jury heard the witnesses, saw their demeanor, and had equal opportunity to weigh their testimony. With reference to the nature and extent of the injuries sustained by the plaintiff, there were manipulations and demonstrations of various kinds in the presence of the court, which it is impossible to portray in a record. The effect of much of this evidence is, of course, lost to us by a mere perusal of the written narrative. It is evident that it made a different impression upon the mind of the judge from what it did upon the jury; for, in passing upon the motion for a new trial, the judge said:

"The main question is, Is the amount allowed by

the jury excessive? It appears to me to be excessive. Probably that is not a correct expression, but it is grossly liberal. It is a great deal more than I would have allowed, if I would have allowed anything. I wish it had been less. I really think it is too much. I do n't know how the jury arrived at this amount. Of course they are the judges. Such verdicts are likely to bring courts and juries into disrepute. Courts ought not to allow such excessive damages to stand. I do not know why jurors will not believe railroad men, but it appears they will not. Now, I think Doctor Everett and these other young men were fair, but the jury would not believe them. The verdict is too much. I wish it had been less.''

Entertaining such views of the verdict, it was clearly the duty of the judge to set it aside and grant a new trial. As a rule, no judgment should be rendered on the verdict of a jury unless the trial judge can say that it is sustained by sufficient evidence, and it is his plain and imperative duty to set the verdict aside when he is satisfied that it is wrong. He has the same opportunity to see and hear the witnesses, and his wider experience entitles him to exercise the authority which the law confers upon him, of being, at least, the exclusive judge of what has been established by the evidence in the case to the satisfaction of a reasonable mind. If he disapproves the verdict, it should be set aside. If language can express it, certainly the verdict in this case was disapproved by the trial judge. There was error, therefore, in overruling the motion for a new trial. (*C. R. I. & P. Rly. Co. v. Reardon*, 1 Kan. App. 114, and cases cited.)

It is contended by the railroad company that the contract for the shipment of the stock provides that no claim for damages that may accrue under the contract shall be valid against the company unless a claim therefor be made in writing, verified by affidavit,

within 10 days from the time the stock is removed from the cars; and that as no such claim was made in this case the action cannot be sustained. We think this provision of the contract has reference solely to injuries done to stock, and has nothing to do with a claim for such injuries as are alleged in this case.

The judgment will be reversed, and the case remanded for a new trial.

All the Judges concurring.