THE STATE OF KANSAS v. STEPHEN G. ELLIOTT.

No. 11,615. (59 Pac. 1047.)

1. SALE OF MORTGAGED PROPERTY — *Accessary — Statutes Construed*. An accessary before the fact, or principal in the second degree in the commission of a felony, need not be of the same class as the principal offender, or be legally capable of committing the main offense. *Held*, therefore, that one not a mortgagor of personal property may be convicted under section 360, chapter 100, General Statutes of 1897 ( en. Stat. 1899, § 2241), of aiding and abetting the mortgagor of such property in the offense of feloniously selling and disposing of it, in violation of chapter 167, Laws of 1899 (Gen. Stat. 1899, §§ 4074, 4075).

2. ———— *Accessary — Statutes Construed*. The general provisions of a statute upon a given general subject will be extended to new classes of like cases subsequently included within the same subject. *Held*, therefore, that the enactment of 1868, contained in section 360, chapter 100, General Statutes of 1897 (Gen. Stat. 1899, § 2241), providing for the punishment of accessaries before the fact, or principals in the second degree in the commission of felonies, applies to one who aids or abets the mortgagor in the felonious offense of selling and disposing of mortgaged property, newly denounced by chapter 167, Laws of 1899 (Gen. Stat. 1899, §§ 4074, 4075).

3. USURY—*Mortgage Contract Construed.* A mortgage of personal property which, stipulates for the highest rate of interest on the mortgage debt allowed by law, and an additional sum in the event that the mortgagor sells the mortgaged property before payment of the mortgage debt through the agency of another than the mortgagee, is not usurious as matter of law.  The mortgagor can avoid the contingency, and, therefore, the payment of the claimed usury, by discharging the debt before selling the property.  (*Tholen v. Duffy*, 7 Kan. 405.)

Appeal from Wilson district court; L. STILLWELL, judge.   Opinion filed February 10, 1900.   Affirmed.

*James M. Kennedy,* county attorney, for The State.
*Kirkpatrick & Kirkpatrick,* for appellant.

The opinion of the court was delivered by

DOSTER, C. J.:  This is an appeal from a judgment of conviction of the offense of fraudulently and feloniously aiding and assisting the mortgagor of personal property in the disposition of it.   D. C. Means was indebted to the Missouri, Kansas & Texas Commission Company and mortgaged his live stock to secure the indebtedness.   He disposed of the mortgaged property with the felonious intent to injure and defraud the mortgagee.   The appellant was charged with feloniously aiding and assisting him to make the fraudulent disposition.   Upon the trial he was found guilty and sentenced as above stated.

The statutes material to consider read as follows :

"That any mortgagor of personal property who shall injure, destroy or conceal any mortgaged property, or shall sell or dispose of such property or any part thereof with intent to defraud the mortgagee, his heirs and assigns, without the written consent of the mortgagee or his or her assigns, shall be deemed guilty of larceny, and on conviction thereof shall be punished. . . ."   (Laws 1899, ch. 167, § 1; Gen. Stat. 1899, § 4074.)

"Every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessary to any murder or other felony before the fact, shall upon conviction be adjudged guilty of the offense in the same degree and be punished in the same manner as herein prescribed with respect to the principal in the first degree." (Gen. Stat. 1897, ch. 100, § 360; Gen. Stat. 1899, § 2241.)

It will be observed that the statute first quoted is not general as to the persons coming within its terms. It is directed at the acts of mortgagors only; hence, it is claimed in behalf of the appellant that, inasmuch as no one but the mortgagor can commit the wrongful act, therefore, in the view of the law, no one but a mortgagor can aid and assist in its commission, or, rather, as to the act, there can be no accessary before the fact or principal in the second degree. The claim is that no one can be held to have aided or assisted in the doing of an act which he was himself incapable of doing. The proposition is a novel one and no cases sustaining it have been cited to us, nor have we been able, by diligent search, to find any sustaining it. The decisions, though not numerous, are all to the contrary.

In *Boggus v. The State*, 34 Ga. 275, the defendant, a single man, was charged with having aided and abetted one Davis, a married man, in the commission of bigamy in marrying a single woman. It was urged that because the appellant, a single man, might himself have lawfully married the female, a single woman, he could not be guilty of aiding another, though disqualified from entering into such relation, to marry her. The court, however, ruled that "one may be convicted and punished as a principal in the second degree, who is incapable of committing the offense in the first degree."

In *United States v. Bayer*, 4 Dill. 407, Fed. Cas. No. 14,547, the defendant was indicted for conspiring with a bankrupt to enable the latter to commit certain offenses against the bankruptcy laws. The interdicted acts were punishable only when committed by "the person respecting whom bankruptcy proceedings are commenced." The defendant not being such person, and consequently incapable of committing the main offense, it was urged that he was therefore legally incapable of conspiring to commit it. This position was held untenable, in view of the federal statute which provided that "if two or more persons conspire to commit any offense against the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty," etc.

In *State v. Sprague*, 4 R. I. 257, the defendant was indicted for aiding and assisting a woman to conceal the birth of the latter's bastard child. The statute read :

"Every woman who shall be convicted of concealing the birth of any issue of her body, which, if it were born alive, would be a bastard, so that it may not be known whether it was born dead or alive, or of concealing the death of any infant bastard child born of her body, so that it may not be known whether such child was murdered or not, shall be imprisoned not exceeding ten months, or be fined not exceeding three hundred dollars."

Another statute provided :

"Every person who shall aid, assist, abet, counsel, hire, command, or procure another to commit any crime or offense, shall be proceeded against, as principal or as accessary before the fact, according to the nature of the offense committed ; and upon conviction

shall suffer the like punishment as the principal offender is subject to by this act."

It was argued that, as none but the mother of the child could be guilty under the statute first quoted, one who aided and assisted her could not be held as principal in the second degree or accessary to her crime. It was ruled otherwise, however, upon the strength of the statute last quoted, the court delivering an opinion reviewing all the cases reported up to that time.

In *People v. McKane*, 143 N. Y. 455, 38 N. E. 950, the defendant was indicted for aiding and abetting election officers in the violation of the laws regulating elections. The statute declaring the prohibitions upon the officers read :

"Any member or clerk of a registry board, who wilfully violates any provision of the election law relative to registration of electors, or wilfully neglects or refuses to perform any duty imposed on him by law, or is guilty of any fraud in the execution of the duties of his office, shall be punishable by imprisonment for not less than two and not more than ten years."

The statute under which defendant was indicted read :

"A person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids or abets in its commission, and, whether present or absent, and a person who directly, or indirectly, counsels, commands, induces or procures another to commit a crime, is a principal."

The defendant's contention was that is was legally impossible for him to commit the offense charged, inasmuch as he was not an officer of the election board, and therefore could not be guilty of aiding the doing of that which he could not himself perform. The

point, however, was ruled against him, the court remarking, among other things :

" The fact that he may, for some reason, be incapable of committing the same offense himself is not material so long as it can be traced to him as the moving cause by instigating others to do what he could not do himself. This was the rule of the common law and it has been applied to offenses like this under special statutes."

In *State of Iowa v. Rowe*, 104 Iowa, 323, 73 N. W. 833, the indictment charged that Chester W. Rowe, as county treasurer, embezzled the county funds, and that Richard Rowe aided and abetted him in so doing. The statute denounced the conversion of money by public officers to their own use as embezzlement. It also declared :

" The distinction between an accessary before the fact and a principal is abrogated and all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, though not present, must hereafter be indicted, tried, and punished as principals."

The same point was made in behalf of defendant that was made in the cases above cited and that is made in behalf of appellant in this one. It was held to be unavailing. The doctrine of these cases is stated by the text-writers upon the subject. It is that an accessary before the fact need not be of the same class as the principal offender, nor, like him, be capable of committing the main offense. (1 Whart. Cr. L., 10th ed., § 211; 1 A. & E. Encycl. of L., 2d ed., 260.)

Attention is called to the fact that the statute of our state making accessaries to felonies punishable as principal offenders was enacted in 1868 ; that the act of selling or disposing of mortgaged personal property

with intent to defraud, etc., was not punishable at that time nor until it was made a misdemeanor by chapter 72 of the Laws of 1874, and that it remained a mere misdemeanor until chapter 161, Laws of 1897, raised it in importance to the character of a felony, which it has continued to be under that and the succeeding amendatory act of 1899, chapter 167 (Gen. Stat. 1899, §§ 4074, 4075). The deduction made from this is that when the act in relation to principals in the second degree in the commission of felonies was enacted, in 1868, it could not apply to the fraudulent sale or disposal of mortgaged personal property, because, such sale or disposal by the mortgagor not being criminally punishable, there could be no accessaries to its commission, and that the statute cannot now be extended to cover cases not then included in its scope. In other words, that, the statute of 1868 not being at the time of its enactment comprehensive of the offense now in question, it cannot be brought within its terms by a subsequent enactment not clearly directed to that end. This position is untenable. It is directly to the contrary of the settled rule of interpretation, which is that general provisions upon a general subject will be extended to new classes of like cases subsequently included within the same general subject. (Suth. Stat. Const. § 284.)

The statute punishing the fraudulent and felonious disposition of mortgaged personal property does not extend to cases of mortgages to secure debts tainted with usury. The mortgage covering the property disposed of in this case provided that if the mortgagor, in disposing of the live stock covered by it, did not do so through the mortgagee as his agent, he should pay the mortgagee fifty cents per head for each animal he disposed of otherwise than through such agency. The

debt secured by the mortgage drew the highest rate of interest allowed by law.   The appellant contends that the provision for sale through the agency of the mortgagee was a cloak for a contract of usury, and should be so denounced by us as matter of law.   We cannot do so.

In *Tholen v. Duffy*, 7 Kan. 405, it was held that a stipulation in a mortgage to pay an attorney's fee upon foreclosure, made at a time when such contracts had not been prohibited by statute, could not be regarded as a stipulation for an usurious rate of interest, because the compulsion to pay the fee was only in the contingency of the foreclosure of the mortgage, and that the debtor could avoid the contingency by the observance of his contract to pay at the required time. So in this case the stipulation to pay in the event of a sale of the live stock through the agency of another than the mortgagee was effective only in the event of the mortgagor's failure to pay the mortgage debt at its maturity.   The mortgage, rightly construed, did not contingently require payment of the stipulated sum in addition to a precedent discharge of the mortgage debt, but only contingently required its payment in the event of a sale during the life of the mortgage.

The judgment of the court below is affirmed.

1. PROMISSORY NOTE—*Negotiability.* A stipulation in an instrument for the payment of a certain sum of money, payable with current exchange on a place other than the place of payment, is not destructive of negotiability.