(May 10, 1910.)

ROBERT TIPTON et al., Respondents, v. EPHRIAM G. ELLSWORTH et al., Appellants.

[109 Pac. 134.]

FORECLOSURE OF MORTGAGE—FRAUD—WAIVER OF—USURY—ATTORNEY'S FEE—BADGE OF FRAUD—BANK EXCHANGE—COVER FOR USURY—NOTE AND MORTGAGE—CONFLICT BETWEEN—DEFAULT IN PAYMENT—PENALTY FOR—PAYMENT OF INTEREST—STIPULATION FOR—SEPARATE PROPERTY OF WIFE—CONTRACTS OF WIFE.

(Syllabus by the court.)

1. *Held,* that there was no fraud, deception or failure of consideration in the contract for the sale of the land involved in this case.

2. Where an original contract has been made for the purchase of land and under that contract the purchasers take possession of the land and have full opportunity to ascertain all of the facts in regard to the water rights and roads connected therewith, and thereafter procure the seller to waive the contract and to deliver them a deed for the premises, and execute a mortgage for the purchase price upon different terms from that provided by the original contract, they thereby waive any question of fraud in the original contract.

3. Under the provisions of subd. 5 of sec. 3459, Rev. Codes, an attorney's fee may be legally stipulated for in case payment shall not be made at maturity, and such stipulation is not a usurious contract.

4. A stipulation to pay bank exchange on borrowed money is not usurious unless it appears that such stipulation is a device to

cover a usurious contract and it was not intended that the money should be remitted to the place to which exchange is provided.

5. Where the provisions of a promissory note, secured by mortgage, vary from the terms of the mortgage, the provisions of the note must control.

6. Where it is stipulated in a promissory note that "the whole sum of both principal and interest shall become immediately due and collectible at the option of the holder of the note" if payment of interest and principal instalments are not made when due, such stipulation is a penalty, and will not be enforced as to the interest not yet earned on the principal.

7. *Held,* that Mrs. Ellsworth is one of the principals upon the promissory notes involved in this case and not a surety.

8. Under the laws of this state, a married woman may bind her separate property jointly by her contract for her own or her husband's debt.

APPEAL from the District Court of the Second Judicial District, for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action to foreclose real estate mortgage. Judgment for plaintiff. *Affirmed.*

Ben. F. Tweedy, E. J. Doyle, and G. Orr McMinimy, for Appellants.

The decree is erroneous because it destroys the equity of redemption, not only of Ephriam G. Ellsworth, but also of Mrs. Ellsworth. A separate sale of the property should have been decreed because, under our statute, such sales are made subject to the right of the owner to redeem. (*Raun v. Reynolds,* 11 Cal. 14–21.)

"The decree should have provided for a sale of the property embraced in each mortgage to satisfy the particular debt, and no other." (*Strode v. Miller,* 7 Ida. 16, 59 Pac. 893.)

"A wife who has mortgaged her separate property for her husband's debt is in the position of a surety. When he has mortgaged or pledged his own property for the same debt, his property should in the first instance be applied to satisfy the mortgage." (1 Jones on Mortgages, 4th ed., p. 93, sec. 114, and cases cited.)

In consideration of the question of usury, "the subject of inquiry in such cases is whether or not a contract has been made whereby, either directly or indirectly, a greater rate may be charged than that authorized by law." (*Ford v. Wash. Nat. B. & L. Assn.*, 10 Ida. 30, 109 Am. St. 192, 76 Pac. 1010.)

The notes upon their face show no necessity of transmitting the money paid to any other place within or out of the state, and the promise to pay exchange on New York is a mere device to collect interest, and is not an agreement to pay actual expenses of exchange on New York, there appearing upon the face of the note no necessity for the shipment of the money to New York or elsewhere to make payment of the notes. (*Siter v. Sheets*, 7 Ind. 132; *Wood v. Cuthberton*, 3 Dak. 328, 21 N. W. 3; *Towslee v. Durkee*, 12 Wis. 480; *Stevens v. Lincoln*, 7 Met. (Mass.) 526; *Rock County v. Wooliscroft*, 16 Wis. 22; *Pacill v. Woods*, 2 Ohio Dec. 381; *Butterick v. Harris*, 1 Biss. 442, 2 Fed. Cas. No. 2256.)

"Usury cannot be sanctioned under any name or guise, and where usury is contracted for, directly or indirectly, party making the loan cannot, under our statutes, recover any interest or cost." (*Stevens v. Home Savings & Loan Assn.*, 5 Ida. 741, 51 Pac. 781, 986; *Vermont Loan & Trust Co. v. Hoffman*, 5 Ida. 376, 95 Am. St. 196, 49 Pac. 315, 37 L. R. A. 509; *Cleveland v. W. L. & S. Co.*, 7 Ida. 477, 63 Pac. 885.)

The provision of the second Guernsey mortgage for the payment of attorney's fees is simply another device to collect interest, for there can be no such expense for collection of interest, separate and apart from the collection of the principal; there can be only one attorney fee contracted for legally; therefore, it must be a device to get interest upon interest in the guise of attorney's fees. (*Towslee v. Durkee*, 12 Wis. 544.)

Eugene A. Cox, and E. O'Neill, for Respondents.

No warranty of title was made by the plaintiff. In the ordinary contract of purchase and sale there is an implication

that the conveyance to be made thereunder will transfer the title to the property; but, in the absence of any special agreement upon the subject, it is incumbent upon the vendee to examine the title for himself, and to point out any objections he may have to the title tendered him by the vendor. (*Easton v. Montgomery,* 90 Cal. 307, 25 Am. St. 123, 27 Pac. 280; *Goodell v. Sanford,* 31 Mont. 163, 77 Pac. 522; *Lake v. Churchill,* 39 Wash. 318, 81 Pac. 849; *Lee v. McClelland,* 120 Cal. 147, 52 Pac. 300.)

In the absence of fraud, the acceptance of a deed merges all of the prior transactions and agreements of the parties into the deed itself, and thereafter the vendee must rely solely on the covenants in the deed. (*Hampe v. Higgins,* 74 Kan. 296, 85 Pac. 1019; *Curtley v. Security Savings Society,* 46 Wash. 50, 89 Pac. 180; *Robison v. Robison,* 44 Ala. 227.)

If an independent examination is made, the vendee cannot claim that he relied upon the vendor's representations, and no rescission will be granted on the ground that such representations were false. (*Attwood v. Small,* 6 Cl. & F. 232, 7 Eng. Reprint, 684; *Southern Development Co. v. Silva,* 125 U. S. 247, 8 Sup. Ct. 881, 31 L. ed. 678, 15 Morr. Min. Rep. 435; *Brown v. Smith,* 109 Fed. 26; *Hill v. Bush,* 19 Ark. 522; *Muir v. Pratt,* 18 Colo. App. 363, 71 Pac. 896; *Brackett v. Carrico* (Ky.), 38 S. W. 694; *Watson v. Austin,* 63 Miss. 469; *Whalen v. Tipton,* 31 Or. 566, 50 Pac. 1016; *Clapp v. Hoffman,* 159 Pa. 531, 28 Atl. 362.)

Since an attorney's fee is payable to the attorney, and not to the plaintiff, that provision, whether contained in one or more notes, is not usurious. (*Broadbent v. Brumback,* 2 Ida. 366, 16 Pac. 555; *Rinker v. Lauer,* 13 Ida. 163, 88 Pac. 1057; *Warren v. Stoddart,* 6 Ida. 692, 59 Pac. 540; *Jones v. Stoddart,* 8 Ida. 210, 67 Pac. 650.)

The Guernsey notes and mortgages are not usurious on account of the provision for exchange. (*Central Bank v. Bank of St. John,* 17 Wis. 157; *Cornell v. Barnes,* 26 Wis. 473; *Buckingham v. McLean,* 13 How. (U. S.) 150, 14 L. ed. 90; 1 Jones on Mortgages, 6th ed., par. 637; 29 Am. & Eng. Ency. of Law, 499; *Stuart v. Saddlery Co.,* 21 Tex. Civ. App.

530, 53 S. W. 83; *Anderson v. Creamery Package Mfg. Co.,* 8 Ida. 200, 101 Am. St. 188, 67 Pac. 493, 56 L. R. A. 554.)

The provision for payment of a higher rate, after default, is to be construed as a penalty and not as usury. The increased amount is payable, not because the borrower agreed to pay and the lender agreed to receive that amount, but because the borrower has breached his contract to make payments or perform other conditions. (*Lloyd v. Scott,* 4 Pet. (U. S.) 205, 7 L. ed. 833; 29 Am. & Eng. Ency. of Law, 507; *Havemeyer v. Paul,* 45 Neb. 373, 63 N. W. 932; *Trust Society v. Hogue,* 37 Or. 544, 62 Pac. 380, 63 Pac. 690; *Omaha Loan & Trust Co. v. Hanson,* 46 Neb. 870, 65 N. W. 1058.)

The note is the evidence of the debt and is the principal obligation of the debtor, the mortgage being simply incidental thereto, and, in case of variance or repugnance in their respective conditions or terms, the note will control. (*Mortgage Security Co. v. Casebier,* 3 Kan. App. 736, 45 Pac. 452.)

Under the provision that upon default the whole indebtedness shall become due and payable, such stipulation is to be construed as a penalty, which will not be enforced except upon canceling the unearned interest notes, and does not make the contract usurious. (*Dugan v. Lewis,* 79 Tex. 246, 23 Am. St. 332, 14 S. W. 1024, 12 L. R. A. 93; *Goodale v. Wallace,* 19 S. D. 405, 117 Am. St. 962, 103 N. W. 651, 9 Ann. Cas. 545.)

The mortgage indebtedness is not Ellsworth's debt; it is the joint debt of himself and his wife. Mrs. Ellsworth was legally competent to buy land, and to bind her separate property for the purchase price. She did not become a surety because she joined with her husband in the purchase, any more than she would have been a surety if she had made a joint purchase with some one else. (*Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497; *Booth Mercantile Co. v. Murphy,* 14 Ida. 212, 93 Pac. 777; *Hall v. Johns,* 17 Ida. 224, 105 Pac. 71.)

SULLIVAN, C. J.—This action was brought by the plaintiff to foreclose three mortgages executed by the appellants. Two of the mortgages were executed by O. E. Guernsey, one

to secure the payment of $3,000 and one to secure interest notes on that $3,000 debt. The other mortgage was given by the appellants to secure an indebtedness of $8,300 evidenced by four promissory notes for $2,000 each and one for $300, payable to Norman Buck, with interest at seven per cent per annum, being the purchase price for an 800 acre tract of land near Waha in Nez Perce county. Said mortgage, in addition to the Buck ranch, covered eighty acres of land in what is known as the Orchard tract south of Lewiston, owned by Mrs. Ellsworth, one of the defendants.

The pleadings are very voluminous and cover about 190 pages of the transcript and put at issue many facts. By one of the cross-complaints, the appellant sought to bring in new parties, which application was denied by the court, and the court also denied an application for a continuance asked for by the appellants in order that the said new parties might be brought in.

Upon the issues made by the pleadings, the cause was tried by the court without a jury and findings of fact were made and judgment and decree entered in favor of the plaintiff upon the three causes of action, foreclosing said mortgages and directing the sale of the property covered by them for the payment of the amount found to be due, which was a little more than $14,000. A motion for a new trial was overruled and this appeal is from the judgment and the order denying the new trial.

Twelve errors are assigned and discussed in a 154 page brief by counsel for appellants. Counsel for appellants state in their brief that they will not attempt to argue separately each alleged error, but urge that each assignment is well taken and should be sustained by the court.

It appears that the indebtedness evidenced by the promissory notes and mortgages grew out of a series of land speculations undertaken by the appellants, Mr. and Mrs. Ellsworth. They came to Idaho about the year 1900 and thereafter became acquainted with the late Judge Norman Buck. Shortly before such acquaintance, Judge Buck's brother had died, leaving 160 acres of land in what is now known as the Lewiston

Orchards tract, near the city of Lewiston. The brother's estate was administered upon by the probate court. The Ellsworths offered to buy said 160 acre tract on credit, as they had no money, and asked Judge Buck to use his good offices with the administrator and heirs in furtherance of such purchase. This Judge Buck did and appellants acquired the land on terms which they were able to meet. They subsequently sold eighty acres of that tract for enough to pay the entire purchase price. The remainder of it is the eighty acre tract included in said mortgages.

For many years Judge Buck owned 800 acres of land near Waha, consisting of two tracts, 640 in one and 160 in the other. Said tracts were separated from each other by a tract of land owned by Miss Nettie Moore, a niece of Judge Buck. A part of Miss Moore's land was acquired by her under the homestead laws of Congress, and one piece of seventy-nine and the other of four and three-fourths acres were conveyed to her by Judge Buck. The seventy-nine acre tract was purchased in 1897 and the smaller tract in 1905. In the deeds conveying said tracts to Miss Moore, Judge Buck reserved the right of way to cross from one of his tracts of land to the other, and also the right of way to lay water-pipes or construct ditches across the land so deeded by him to her. In the deed of 1905, the right of way was reserved and also a right to share with her certain water. The 160 acre tract so held by Judge Buck lies on the hillside at a higher elevation than the Moore lands which adjoined it, and also higher than the larger tract of Buck's land which adjoined the Moore land. The surface ground and the natural flow and drainage of waters is downward from the 160 acre tract across Miss Moore's land to the larger tract of the Buck lands. The Moore lands and the Buck lands have upon them several small springs. There is some conflict in the evidence as to the amount of water which they supply, but that cuts no special figure so far as the decision of this case is concerned. In the irrigating season there is no natural flow from any of these springs except one upon the 160 acre tract of Buck lands. The flow from this spring runs down upon the land of Miss.

Moore, and the evidence shows that she had diverted it from its natural channel at a point on her land and had been using it about twenty years to irrigate a small tract of land near her home. There is evidence tending to show that said spring only supplies sufficient water to irrigate a small piece of land.

It appears that the Ellsworths, after they had been successful in their purchase of the 160 acres of land belonging to the estate of Judge Buck's brother, became anxious to purchase Judge Buck's ranch. Judge Buck, it appears, was reluctant to sell, especially as the Ellsworths were not prepared to pay cash. However, the appellants visited said land during the month of August, 1906, and made a thorough inspection of the whole premises and the springs thereon. Judge Buck was not with them and they were shown over the land by Miss Moore. She did this for their accommodation and not as the agent of Judge Buck. They remained with her over night and spent another day in the investigation of the premises by themselves. It appears from Ellsworth's testimony that this investigation was quite thorough and complete. At that time Miss Moore was using, and had been for more than twenty years, the water which she now claims, and she called their attention to that fact. Miss Moore herself testified as follows: "He [Ellsworth] asked me in the presence of Senator [Teller] if I would sell those springs up there [meaning the springs from which she was getting water], and I told him no. He asked that again when he had lived there two or three months, and again, I think, if there were no springs of that kind up in his locality, and I said no." Ellsworth himself testified as follows: "Saw Miss Moore's garden and alfalfa patch; I didn't think it was over an acre there by the house. She was irrigating, I think so, for garden, orchard, etc."

After having made this inspection and ascertaining the facts in regard to the water, the Ellsworths not only urged Judge Buck to sell them the land, but it appears from the evidence, Mr. Ellsworth offered to pay Miss Moore, Storey Buck, a son of Judge Buck, and others if they would induce Judge Buck to sell said land to them. In the fall of 1906,

after the Ellsworths had made a thorough investigation of said land and on the earnest solicitation of the Ellsworths, Judge Buck consented to sell the land to them. A draft of the contract of sale was prepared in Storey Buck's office and was submitted to Eugene O'Neill, Esq., Ellsworth's attorney, together with an abstract of title and the original deeds and right of way agreements between Miss Moore and Judge Buck. The abstract and original documents submitted were examined by Mr. O'Neill and the contract of sale was prepared by him, using the original deeds and said abstract for his data. In that transaction Judge Buck acted as his own attorney and O'Neill acted as the attorney for the Ellsworths. By the terms of said contract, the Ellsworths agreed to purchase and Buck agreed to sell, said land with such rights of way and water agreements appurtenant thereto as Judge Buck had, for $16,000, $5,000 payable by assuming a $5,000 mortgage on the premises held by one Fitzgerald, and the balance payable $1,000 in cash, $2,000 November 15, 1908, and $2,000 yearly thereafter until $10,000 was paid, that being the amount of the purchase price in excess of said mortgage; deferred payments to draw interest at the rate of seven per cent. By this contract the Ellsworths agreed to buy and Buck agreed to sell.

After describing the lands, the contract provides that Buck shall transfer to the Ellsworths said land and property described as follows: "Also a right of way for a wagon track twenty (20) feet wide . . . . as reserved in deed of Norman Buck to Nettie Moore, dated August 27, 1902, and also the right of way for ditches and pipes for water across the said land, as reserved in said deed. All those rights reserved to Norman Buck in his deed of December 11, 1905, in favor of Nettie Moore," etc. At the same time Ellsworth's attorney prepared a deed from Judge Buck and his wife to Ephriam G. Ellsworth, one of the appellants, which deed was signed, acknowledged and placed in escrow. This deed, in addition to conveying the lands, conveyed such right as Judge Buck had by virtue of his reservations in the deeds to Nettie Moore in the same identical language as used in said deeds. Said contract and deed disclose as clearly as it is possible to do

that Buck intended and agreed to sell to appellants the land which he owned and whatever rights he might have under the reservations in his former deeds to Miss Moore. Not only was the abstract of said lands submitted to Ellsworth's attorney, showing what these rights were, but the original instruments reserving the rights were delivered to Ellsworth's attorney for examination and were used as the basis upon which the Buck contract and deed were drawn. Mr. O'Neill testified, among other things, as follows: "Judge Buck was to sell all he had out there and Ellsworth was purchasing the same, and I took the deeds to be the best evidence of what he would sell and I copied right from the original deeds."

Immediately after the purchase contract was executed the Ellsworths entered into the possession of the Buck lands. They also leased and entered into the possession of all of the lands there belonging to Miss Moore except the four and three-fourths acre tract where she resided. They had possession of and access to both the Moore and Buck lands, and full opportunity to become familiar with the land and the water on both tracts and with the nature and character of Miss Moore's user of and claims to the water and also the right of way over her land.

During the summer of 1907, Miss Moore used the water as she had always used it and Ellsworth assisted her in clearing out the ditches and conducting the water to her lands. Ellsworth also leased some cattle belonging to Miss Moore, over which they afterward had trouble, which Judge Buck settled between them at Ellsworth's request. At that time the contentions between Miss Moore and the Ellsworths were well defined and understood by the Ellsworths. They, however, made no claim of fraud or misrepresentation and made no effort to rescind their contract with Judge Buck. During all of the time after the Ellsworths took possession of said land under said contract of purchase and of the Moore land under the lease, they were crossing and recrossing the Moore land from one of the Buck tracts to the other, and some difficulty arose between them in regard to the places where the Ellsworths should cross the Moore land. On account of said diffi-

culty, an action was instituted between Miss Moore and the
Ellsworths and a decree was entered by the court in that suit
against the Ellsworths, and the court therein made certain
provisions as to the use of the water mentioned in the reserva-
tions of the Buck-Moore deeds, and declined to enter a decree
establishing a right of way as claimed by the Ellsworths. If
that decree was erroneous, the remedy was by appeal. It
appears from the record that since the entry of that decree
the appellants have conceived themselves to be in some way
defrauded or cheated.

It appears from the record that the water which Miss Moore
had been using was derived from springs on all of said tracts
of land. It was abundant for stock and domestic purposes,
and it appears that neither Ellsworth nor any other person
had ever used any water on the Buck lands for irrigation,
but had used one of the small springs on the larger tract for
domestic purposes. In the summer of 1907, Ellsworth and
Miss Moore each filed separate applications for water rights
in the office of the state engineer, and an action is now pending
in the district court to determine their several rights in
regard to that matter. If it should appear in that case that
Miss Moore's right to the use of said water was established
by her twenty years of actual use thereof, we cannot see how
that could have any influence or effect on the case at bar what-
ever.

Under the contract of purchase, the Ellsworths paid $1,000
cash and were not required to make another payment until
November 15, 1908, when an additional sum of $2,000 became
due. After he had been in possession of the premises a year
and had become fully acquainted with every possible circum-
stance and fact in connection with the land and must have
understood the conditions in regard to the water, he did not
attempt to rescind said contract or make any claim against
Buck whatever for a failure of any of the covenants in said
deed, but did induce Judge Buck to waive the terms of the
purchase contract and accept a payment of $1,700 instead of
$2,000, and also to deliver the deed to him and accept a
mortgage upon the premises and upon the eighty acre tract.

above mentioned that stood in the name of Mrs. Ellsworth, as security for the payment of the balance of the purchase price. There is no suggestion in the evidence that Judge Buck made any representations to Ellsworth at the time when this mortgage was executed to induce him to execute it, but at the solicitation of Ellsworth Judge Buck waived the terms of the original contract and substituted a new one.

In order to make the second payment on said land of $1,700, Ellsworth and his wife borrowed from said O. E. Guernsey $3,000, evidenced by the Guernsey notes and secured by the Guernsey mortgage set out in the complaint. Counsel for appellant contends that there was fraud and failure of consideration in this transaction. There is nothing in that contention whatever, as the clear preponderance of evidence shows that said land is reasonably worth all that the Ellsworths agreed to pay for it. The evidence fails to show any misrepresentations on the part of Buck or any fraud whatever practiced by him. Counsel contend that there was a partial failure of consideration by reason of the fact that the appellants did not get certain water which they aver they were entitled to under the deed from Buck. Judge Buck sold them only such rights as he held, and if they have lost their right to any water by their failure to make a proper appropriation thereof, it is their own fault and not the fault of Judge Buck. They knew more than a year before they executed the mortgages in question that no irrigation works of any kind had been begun and that no application of any water whatever had been made to said land, and that to complete an appropriation of water, it required actual application of the water to the land. It is sufficient to say that the Ellsworths' inspection of the land itself and their possession of it for more than a year disclosed all of those facts. After knowing all this, he waived the original contract, and procured Judge Buck to deliver him the deed to the lands and accept a mortgage to secure the deferred payments thereon. The waiving of the original contract and the acceptance of a deed and the execution of a mortgage upon different terms would waive any

question of fraud, had any existed. But none whatever existed. (*Smith v. Smith,* 4 Ida. 1, 35 Pac. 697.)

Counsel for appellants next contend that the Guernsey mortgages are usurious for the following reasons: (1) That two mortgages and two sets of notes were given to secure one debt, each providing for attorney's fees. (2) That the notes and coupons, while payable at a local bank, provide for New York exchange. (3) That while the principal note clearly provides for eight per cent interest after default, the principal mortgage in one part of the printed form reads "ten per cent." (4) That the notes provide, upon default, that the whole sum of principal and interest, whether earned or not, shall become immediately payable at the option of the holder.

As to the first contention that two mortgages and two sets of notes were given to secure one debt, each providing for attorney's fees, that contention would apply equally to any loan where the evidence of debt was split up into several notes. This court has held that since an attorney's fee is allowed for the payment of the attorney, that .provision, whether contained in one or more notes, is not usurious. If the provision for an attorney's fee is used as a device to conceal actual usury and evidence to that effect were properly submitted, the note would, of course, be held usurious. As the record appears, the court is urged to presume that because a lender takes several notes to evidence one indebtedness, each providing for an attorney's fee, that that fact alone constitutes usury, although this presumption is repudiated on the face of the notes by the fact that the loan is for less than the legal rate. We cannot concur in that contention. In *Broadbent v. Brumback,* 2 Ida. 366, 16 Pac. 555, this court said: "The appellants claim also that the attorney fee is but usury in disguise, and ought not to be allowed. In *Lloyd v. Scott,* 4 Pet. 205 [7 L. ed. 833], Justice McLean says: 'When a party agrees to pay a specified sum, exceeding lawful interest, provided he do not pay the principal by a day certain, it is not usury.'" (*Rinker v. Lauer,* 13 Ida. 163, 88 Pac. 1057; *Warren v. Stoddart,* 6 Ida. 692, 59 Pac. 540; *Jones v. Stoddart,* 8 Ida. 210, 67 Pac. 650.)

Subd. 5 of sec. 3459, Rev. Codes, provides that costs of collection or attorney's fees in case payment shall not be made at maturity may be stipulated for. That may be done in an interest note as well as in a principal note.

As to the stipulation for exchange being an usurious contract, this court is aware that some early decisions in this country held to that effect. It was during a period of the country when exchange was very high, but unless it is made to appear that the stipulation for exchange is a device to cover a usurious contract, under recent decisions it is held not to be usury. In *Cornell v. Barnes,* 26 Wis. 473, the court had under consideration this question, and said:

"It seems very clear that there was no usury in this mortgage by reason of the stipulation for exchange—conceding that where exchange is contracted for as a mere mode of obtaining more for the use of the money than legal interest, and without any design that it shall be remitted to the place upon which exchange is provided, it would be usury. Where such is not the case and the exchange is stipulated for in good faith as payment for the transportation of the money, it does not make the contract usurious, even though in addition to the highest rate of interest allowed by law. In such case it is not paid as interest. It is not paid for the use of the money. But it is paid only as the expense of making the payment itself at the place where the parties might have contracted that it should be made."

It is the well-settled rule of law that a charge for exchange, unless used as a cover for usury, is legal and not usurious. (*Buckingham v. McLean,* 13 How. (U. S.) 150, 14 L. ed. 90. See, also, 1 Jones on Mortgages, 6th ed., sec. 637; 29 Am. & Eng. Ency. of Law, 499.)

In the case at bar, the reason for the insertion of the provision for exchange is clearly shown by the complaint. Guernsey was a resident of Dubuque, Iowa, and wanted the payment made in New York City. It also appears that afterward arrangements were made with the bank at Lewiston to transmit the money without the payment of any exchange,.

and no exchange has been exacted. It is clear that the contract for exchange is not a cover for usury.

It is next contended that the mortgage provides for ten per cent, while the promissory note to secure the payment of which the mortgage was given only provides for eight per cent and that the stipulation in the mortgage must control. There is nothing in that contention. The promissory note represents the principal obligation of the debtor and the mortgage is only an incident thereto. It is evident that the mortgage was on a printed form which contained a provision for ten per cent, and the scrivener had neglected to make the change in accordance with the terms of the promissory note. When there is a conflict between the note and the mortgage, the provisions of the note must control. (*New Eng. Mtg. Sec. Co. v. Casebier,* 3 Kan. App. 736, 45 Pac. 452. As bearing upon this case, see, also, *Anderson v. Creamery Pkg. Mfg. Co.,* 8 Ida. 200, 101 Am. St. 188, 67 Pac. 493, 56 L. R. A. 554.) It appears from the record that the plaintiff purchased the Guernsey notes and mortgages, if not at the request, certainly with the knowledge, of the Ellsworths, and without any knowledge that there was any defense whatever to them. The notes provide for less than the legal rate of interest, which thus removes any question of usurious intent. It is clear to us that the respondent purchased these notes for full value and in good faith.

The next contention is that the promissory notes are usurious, for the reason that upon default in payment of either principal or interest it is provided that the whole sum of both principal and interest shall become immediately due and collectible at the option of the holder of the notes; that under this stipulation the interest that has not matured would become due in default of payment. We think the proper construction of the stipulation is that the whole of the principal may become due at the option of the holder in default of payment, but no unearned interest becomes due. That stipulation is in the nature of a forfeiture and was not intended to be and is not a usurious contract, and a court of equity will not enforce the stipulated penalty as to the forfeiture of un-

earned interest, and the stipulation will not be enforced except upon the cancellation of the unearned interest notes.

In *Dugan v. Lewis,* 79 Tex. 246, 23 Am. St. 332, 14 S. W. 1024, 12 L. R. A. 93, the court had under consideration a deed of trust that contained a provision to the effect that if the borrower of the money failed to pay the indebtedness as stipulated, the whole sum of money secured thereby should become due and the whole amount of interest for the entire period should be collectible according to the terms of the contract. The court held in that case as follows:

"We do not think that a correct construction of the contract will make a greater amount of interest due and collectible upon it than shall have accrued on the principal calculated up to the date of collection at the rate named in the note, or, in other words, that any unearned interest comes within the proper meaning of the stipulation. In any event, we agree with the conclusion of the judge before whom the cause was tried, that the said stipulation 'is to be construed as a penalty, which will not be enforced except upon canceling the unearned interest notes, and that it does not make the contract usurious.'" (See, also, *Goodale v. Wallace,* 19 S. D. 405, 117 Am. St. 962, 103 N. W. 651, 9 Ann. Cas. 545.) In the case at bar, the court gave judgment only for the interest due at the date of the judgment.

Counsel for appellant also contends that the time for paying the Guernsey notes had been extended for one interest period, at least. Applying the evidence to this contention, we find that it was not the intention of Tipton to extend the time for any definite period, but only for time sufficient to allow the Ellsworths to ascertain whether a settlement of some kind could be made in regard to the Buck notes and mortgage, and it was ascertained that no compromise could be made as to the Buck notes.

Some objection is raised to the decree on the ground that it leaves the sheriff to segregate and apportion the cost between the several tracts. That is not a valid objection to the decree. It is contended that under this decree Mrs. Ellsworth's property might be sold first, and in that way the

property of a surety would be subjected to the payment of the debts of the principal. We do not think there is any reason to consider Mrs. Ellsworth a surety upon this indebtedness. While the trial court found certain parts of the mortgaged property was her separate property, at the request of the defendants, we are unable to find anything in the record which would suggest that she is a surety. She and her husband both contracted to purchase the Buck property and the purchase price was her debt as much as his. Under our statute she has full power to make a contract and to bind her separate property. So far as this case is concerned, it is immaterial what part of the mortgaged property is sold first. The statute provides that the debtor may direct the order in which the property shall be exposed for sale, and the decree does not deprive them of that right. In the case at bar, no personal judgment was rendered against her and no deficiency judgment is provided for against her by the decree. The original contract was made with Judge Buck, was signed by Mrs. and Mr. Ellsworth, and the evidence shows that she participated in all the negotiations. The title was subsequently taken in her husband's name, but this was done at the request of herself and husband. This court held in *Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497, as follows: "There can no longer be any question in this state as to the power of a married woman to bind her separate property and estate for the payment of a debt." (*Booth Mercantile Co. v. Murphy,* 14 Ida. 212, 93 Pac. 777; *Hall v. Johns,* 17 Ida. 224, 105 Pac. 71.)

It will serve no good purpose in this opinion to quote extensively from the evidence, as it is very voluminous and covers many pages of the transcript. It is sufficient to say that we have examined the evidence carefully, and conclude that the findings of fact are fully sustained by it.

It will not be necessary for us to discuss further any of the errors assigned. We have carefully examined each of them and find no reversible error in the record. The judgment is therefore affirmed, with costs in favor of respondent.

Stewart and Ailshie, JJ., concur.

ON PETITION FOR REHEARING.

(June 7, 1910.)

PER CURIAM.—The appellant, Sarah M. Ellsworth, has filed a petition for a rehearing in this case in which she calls our special attention to some features of the evidence with reference to the water right appellants claim to have acquired in their purchase of this land. We have given the matters mentioned in her petition further consideration. We do not find, however, such a condition of facts developed as would justify us in reversing the judgment of the trial court. The matters discussed in this petition are substantially the same questions presented on the original hearing. The petition must be denied, and it is so ordered.