(No. 5357. July 30, 1929.)

L. F. EASTON, Respondent, v. BUTTERFIELD LIVE STOCK COMPANY, a Corporation, the Charter of Which has Been Forfeited, WILLIAM HOWELL, AUGUST BRODERSON, P. F. RIEGER, F. C. EPPERSON and C. J. SELWYN, the Last Managers and Directors of the BUTTERFIELD LIVE STOCK CO., a Corporation, and as Trustees of the Property and Affairs of Such Corporation, Appellants; HIGH & FRITCHMAN COMPANY, a Corporation, Intervenor.

[279 Pac. 716.]

Fisher & Coffin, for Appellants.

Martin & Martin, for Intervenor High & Fritchman Company.

Edwin Snow, for Respondent Easton, files no brief.

BAKER, District Judge.—The contending parties in this court are the directors and statutory trustees of the Butterfield Live Stock Company, Limited, hereinafter referred to as the "live stock company," a corporation whose charter has been forfeited for failure to file its annual statement and pay its annual license tax, as appellants, and the intervenor, High & Fritchman Company, as respondent. The demands of all other parties have been satisfied.

Under date of October 1, 1922, the live stock company, for the purpose of borrowing money, issued its bonds for the total principal sum of $175,000, some maturing each year from 1924 to 1932, all bearing interest until maturity at the rate of seven per cent per annum, payable semi-annually

and evidenced by attached interest coupon notes. It was expressly provided that the principal of the bonds and the principal of the coupon notes should bear interest after maturity at the rate of ten per cent per annum. Payment of principal and interest was secured by trust deed upon various tracts of real property in this state. Both bonds and trust deed provided that upon thirty days' continued default in the payment of principal or interest, the trustee might declare the whole sum of both principal and interest to be due and payable. The trust deed also provided that no bond should be a valid, legal or binding obligation of the live stock company until a certificate, attached to each bond to the effect that it was one issued under the trust deed, had been executed by the trustee.

The live stock company made payment of the interest to October 1, 1926, and of the bonds maturing on October 1, 1924. It defaulted in the payment of the bonds thereafter maturing and failed to pay any interest becoming due after October 1, 1926. The intervenor, which had succeeded to the office of trustee, filed its complaint in intervention in which it recited these defaults with others and expressly elected to declare all sums of both principal and interest to be due and payable. It sought judgment for the unpaid principal of the bonds with interest to maturity at the rate of seven per cent per annum and after maturity, whether by lapse of time or by exercise of option, at the rate of ten per cent per annum and the principal of matured and unpaid interest coupons with interest thereon at the rate of ten per cent per annum from their due dates.

The complaint in intervention alleged and the answer of the directors admitted that all of the bonds were sold and delivered to various purchasers for cash by the live stock company. Intervenor alleged and the directors denied for want of information that the certificates were duly executed by the trustee. The directors admitted the payments upon the principal and interest, pleaded payment upon the "indebtedness" of the sum of $57,600 and that the interest

provisions referred to violated the usury statutes of this state.

Upon the trial no bond was offered in evidence. The president of the intervenor testified that his company represented the live stock company in the sale of the bonds; that he, with an attorney for the live stock company, went to the office of the original trustee in Portland, Oregon; that the bonds were there delivered to the trustee by the attorney; that the trustee then executed the certificate attached to each bond and that the bonds were delivered with certificates executed to the intervenor for sale and were by it sold. He also testified to payments made and to other matters not now material. The trial court entered decree allowing full recovery of principal and interest claimed and foreclosing the trust deed. The directors have appealed.

Appellants contend, first, that the court erred in admitting parol testimony that the trustee had executed the certificates attached to the bonds; and secondly, that the court erred in refusing to determine that the bonds provided for a usurious rate of interest and in refusing to impose the statutory penalty.

In view of the facts recited, it is not, we think, necessary to determine whether the execution of the certificates by the trustee could be proved only by producing the bonds themselves or by parol after strict proof had been made that the original bonds were lost or could not be furnished. The provision requiring the execution of the certificate was plainly for the benefit and protection of the live stock company and was a provision it might waive. The complaint alleged, the answer admitted and the proof established that the bonds were sold for cash by the agent of the live stock company and that the company recognized them as valid obligations by delivering at various times the sum of $47,600 in payment of four years' interest on the full issue outstanding and the sum of $10,000 in payment on principal. If the agent of the live stock company had sold and delivered the bonds without the execution of the

certificate by the trustee, we think the facts clearly establish a ratification by the company and estop it from now denying the validity of the issue. (*Blackwell v. Kercheval*, 27 Ida. 537, 149 Pac. 1060; *Seeley v. Security National Bank*, 40 Ida. 574, 235 Pac. 976.)

▇▇ Appellants assert that the bondholders should be subjected to the penalties prescribed by statute not only for the reason that the bonds and trust deed attempt to authorize the recovery of interest at a rate in excess of ten per cent per annum but also that interest in excess of that rate was actually charged and was allowed by the trial court. The latter condition resulted from the enforcement of the provision of the bonds for the payment of ten per cent interest on the principal of both bonds and coupons after maturity.

By C. S., sec. 2552, parties are permitted to agree in writing for the payment of interest at any rate not in excess of ten per cent per annum and by C. S., sec. 2553, are authorized to agree for the payment of compound interest at a rate not in excess of the maximum fixed by C. S., sec. 2552, provided the aggregate of simple and compound interest does not exceed the maximum rate on principal. C. S., sec. 2554, fixes the penalty for "the taking, receiving, reserving or charging a rate of interest greater than . . . . allowed . . . . when knowingly done."

It must be admitted that intervenor was allowed a profit which exceeded interest at the rate of ten per cent per annum for the period between the maturity of the bonds, whether by lapse of time or declaration, and the entry of the decree. The intervenor was allowed interest on the principal from the dates of maturity and was for the same period allowed interest on delinquent and unpaid coupons. However, the fact that interest at a rate in excess of the statutory maximum was allowed for a short period does not constitute usury. In determining whether usurious interest has been charged or collected under a particular contract it is not permissible to consider only a portion of the term. The test is, Did the lender under his contract charge or

receive a profit on his investment in excess of the maximum rate for the full period of the loan? If he has, there is usury; otherwise not. Such was the rule employed by this court in determining whether the contract involved in *United States Building & Loan Assn. v. Lanzarotti*, 47 Ida. 287, 274 Pac. 630, was usurious. See, also, *Green v. Conservative Loan Co.*, 153 Ark. 219, 240 S. W. 13; *McTighe v. Macon Construction Co.*, 94 Ga. 306, 47 Am. St. 153, 21 S. E. 701, 32 L. R. A. 208; *Metz v. Winne*, 15 Okl. 1, 79 Pac. 223; *Garland v. Union Trust Co.*, 63 Okl. 243, 165 Pac. 197; *Clement Mortgage Co. v. Johnston*, 83 Okl. 153, 201 Pac. 247; *Cissna Loan Co. v. Gawley*, 87 Wash. 438, Ann. Cas. 1917D, 722, 151 Pac. 792, L. R. A. 1916B, 807; *Shropshire v. Commerce Farm Credit Co.*, (Tex. Civ. App.) 266 S. W. 612; *American Investment Co. v. Lyons*, 29 N. M. 1, 218 Pac. 183; *American Investment Co. v. Roberts*, 29 N. M. 99, 218 Pac. 1037. The interest paid was $47,600 and that allowed by the decree was $29,969.61, or a total of $77,569.61. Interest at the maximum rate upon the unpaid principal of the bonds from their dates to the date of the decree and not to their full maturity amounts to $101,687.50 or $24,117.89 in excess of the aggregate of interest paid and interest allowed. It is apparent that usurious interest was not collected.

There is nothing in the case to suggest that the provision for a greater rate of interest after maturity was not made in good faith or was but a device or a contrivance to cover usurious interest. The duration of the loan disproves such intention. It is quite generally held that usury statutes apply only to unmatured contracts where the obligation of the borrower is definitely fixed. Under the quite unanimous declarations of courts and text-writers neither the fact that the bonds bear a higher rate of interest after maturity, whether by expiration of time or declaration following default, nor the collection by the intervenor for a period of interest greater than the maximum allowed renders the contract usurious. Where the borrower may by performance of his contract avoid a liability for the payment

of an additional sum, the extra payment is not regarded as interest for the use of money but as a means to enforce punctual payment and as a penalty for default. Where a debtor may relieve himself by payment or performance of his obligation according to its terms, a contract providing for a higher and even an excessive rate after maturity or default is not regarded as usurious. (2 Page on Contracts, secs. 972, 973, p. 1721 et seq.; 27 R. C. L. 232, 234; 39 Cyc. 954; *Tipton v. Ellsworth,* 18 Ida. 207, 109 Pac. 134; *Goodale v. Wallace,* 19 S. D. 405, 117 Am. St. 962, 9 Ann. Cas. 545, 103 N. W. 651; *Ward's Admrs. v. Cornett,* 91 Va. 676, 22 S. E. 494, 49 L. R. A. 550, and note; *State v. Elliott,* 61 Kan. 518, 59 Pac. 1047; *Law Guarantee & Trust Society, Ltd., v. Hogue,* 37 Or. 544, 62 Pac. 380, 63 Pac. 690; *Blake v. Yount,* 42 Wash. 101, 114 Am. St. 106, 7 Ann. Cas. 487, 84 Pac. 625; *Cissna Loan Co. v. Gawley, supra; Sanford v. Lichtenberger,* 62 Neb. 501, 87 N. W. 305; *Havemeyer v. Paul,* 45 Neb. 373, 63 N. W. 932; *Hunt v. Bell,* 129 Ark. 167, 195 S. W. 362; *Upton v. O'Donahue,* 32 Neb. 565, 49 N. W. 267.) Whether, if the increased rate after maturity would return to the borrower a profit in excess of the statutory limit over the period of the loan and indulgence, the excess would be treated as an unenforceable penalty is not involved in this case for, as we have seen, the bondholders did not realize more than the lawful maximum.

Respondent did not attempt to enforce the payment of the unmatured coupons. When maturity was accelerated by declaration following default, the coupons no longer represented the interest to become due. The declaration amounted to a surrender of the coupons and the rate of interest was thereafter as fixed in the bond. (*Moore v. Cameron,* 93 N. C. 51; *Dugan v. Lewis,* 79 Tex. 246, 23 Am. St. 332, 14 S. W. 1024, 12 L. R. A. 93; *Tipton v. Ellsworth, supra; Goodale v. Wallace, supra; Garland v. Union Trust Co., supra;* 27 R. C. L. 234.)

We are not concerned with that much disputed question of whether a provision in a note or other contract for the payment of compound interest of itself renders the

contract usurious. (*Rogers v. Rivers*, 135 Miss. 756, 37 A. L. R. 313, 100 So. 385; *Jones v. Nossaman*, 114 Kan. 886, 37 A. L. R. 317, 221 Pac. 271; note, 37 A. L. R. 325.) The right to contract for the payment of such interest and the limitations on that right are both given and fixed by the provisions of C. S., sec. 2553. Examining the bonds and the trust deed in question to determine the possibility of the provision for compounding interest returning to the investor, prior to the maturity of the bonds, an illegal rate, we find that the profits earned on the investment will not exceed, when spread over a period of years, the maximum rate allowed until the maker has been in default and the interest has been compounded for more than nine years. Under the contract there would accrue to the holders of the bonds on the sixth year, if default be made each year, an income in excess of ten per cent of the principal but when the interest is spread over the term, the total earnings would not exceed the rate of ten per cent per annum until during the tenth year. It would not, therefore, be possible under the contract for the holder of any bonds except those maturing in 1932 to collect prior to maturity aggregate interest in excess of the rate of ten per cent per annum. The total earnings on the bonds maturing in 1932 would be one hundred and one and five-tenths per cent or an excess of fifteen cents per hundred dollars annually during the ten-year period. At the end of that ten-year period the bonds maturing in 1924 in the amount of $10,000 would be eight years overdue, those maturing in 1925 in the amount of $10,000 would be seven years overdue, those maturing in 1926 in the sum of $10,000 would be six years overdue, and those maturing in 1927 in the sum of $15,000 would be five years overdue, and the holders of the bonds maturing in 1932 would have waived for nine years the provision authorizing acceleration of maturity.

To constitute usury it is necessary that the excessive interest be "knowingly" taken, received, reserved or charged. (C. S., sec. 2553; *Anderson v. Creamery Co.*, 8 Ida. 200, 101 Am. St. 188, 67 Pac. 493, 56 L. R. A. 554; 2 Page on

Contracts, sec. 964, p. 1708.) When we consider that the opportunity of exacting excessive interest was postponed for the period of more than nine years from the date of the contract, that no effort was made to collect illegal interest, the improbability of the bondholders waiving defaults for nine years in order to collect such interest and that the bonds were offered for sale and sold by the live stock company after it had either prepared or approved the contract, we cannot say that the contract discloses a corrupt intention on the part of the bondholders to knowingly take, receive, reserve or charge interest at a rate in excess of ten per cent per annum and that all interest earned shall be forfeited and all payments made applied to the payment of principal.

The decree appealed from is affirmed, with costs to respondent.

Budge, C. J., Givens and Wm. E. Lee, JJ., and Brinck, D. J., concur.