**GARLAND et al. v. UNION TRUST CO. et al.**

No. 6265—Opinion Filed April 24, 1917.

(165 Pac. 197.)

(Syllabus by the Court.)

**1. Mortgages—Usury—Rate of Interest—Mortgage Loan—Remedy.**

The mortgage sought to be foreclosed was dated May 25, 1912, and secured the repayment of a loan of $50,000, evidenced by 50 gold notes for $1,000 each, the first two being due December 1, 1912. All were payable to bearer or the registered holder thereof, with 6 per cent. interest per annum from June 1, 1912, and each provided that if any installment of principal or interest was not paid when due, "the principal of this and all of said notes shall become due and payable," and "said principal sum, if not paid at maturity, shall bear interest at the rate of 10 per cent. per annum with annual rests after maturity until paid." At the time the evidence of debt was made, executed, and delivered, mortgagee deducted $2,500 from the principal sum of the loan, and exacted of the mortgagors a note for $2,750, payable one year after date, with 8 per cent. interest per annum until paid, upon which, on November 25, 1912, mortgagors paid the semiannual interest, amounting to $110. At the time the first two notes fell due, December 1, 1912, mortgagors defaulted, but on December 21st paid, as interest on the loan, $1,572.22, whereupon the mortgagee elected to accelerate the maturity of the principal of the loan and sued to foreclose therefor. Held, accepting the concession that the $2,500 deducted to be interest paid, and the mortgage of $2,750 to be interest charged on the loan, and the $110 semiannual interest to be also interest paid, as all interest paid and charged for the entire time the loan had to run, had the contract been performed, did not exceed the lawful rate, the trial court did right in holding the transaction free from usury. Held, further, that because the mortgagee, under the contract, by the exercise of his option accelerating the maturity of the loan, was entitled to demand more than the amount of the loan with legal interest to the time the loan is called does not make the transaction usurious. Held, further, that neither was the evidence of debt usurious upon its face because it provided for interest on the principal sum at 6 per cent. per annum before maturity and 10 per cent. thereafter, with annual rests until paid. Whether the increase of 4 per cent. was for the "detention" of money, in contravention of the statute, or was a penalty, being an increase to the maximum legal rate of interest only, the evidence of debt was a valid contract for the payment of interest. Held, further, that plaintiff was not entitled to recover on and have foreclosed its mortgage for $2,750, for, having been executed to secure the payment of interest charged and unearned at the time of the acceleration of the maturity of the principal debt of $50,000, said $2,750 mortgage, like the remaining unpaid interest coupons securing the interest on said debt of $50,000, was discharged.

**2. Mortgages — Foreclosure — Interest — Set-Off.**

The mortgage sought to be foreclosed was dated May 25, 1912, to secure the payment of a loan of $50,000, evidenced by 50 gold notes of $1,000 each, the two first being due December 1, 1912. All were payable to bearer or the registered holder thereof, with 6 per cent. interest per annum from June 1, 1912, and each provided that if any installment of principal or interest was not paid when due, "The principal of this and all of said notes shall become due and payable. * * *" At the time the evidence of debt was made, executed, and delivered, mortgagee deducted $2,500 from the principal sum of the loan, and exacted of the mortgagors a note for $2,750, payable 1 year after date, with 8 per cent. interest per annum until paid, upon which, on November 25, 1912, mortgagors paid the semiannual interest, amounting to $110. At the time the first two notes fell due, December 1, 1912, mortgagors defaulted, but as December 21st paid, as interest on the loan, $1,572.22, whereupon the mortgagee elected to accelerate the maturity of the principal of the loan and sued to foreclose therefor, which was done, whereupon the court rendered judgment in favor of plaintiff for $50,000, with interest thereon at 6 per cent. from December 1, 1912, to the date of the judgment, amounting in all to $52,666.67, together with 10 per cent. of that amount for an attorney's fee. Held, error, in that the court should have allowed interest at 6 per cent. on the $50 000 from June 1, 1912, to the date of the judgment, which, principal and interest, would be $54,166.66. And for this amount the court should have rendered judgment, had not defendants, on May 25, 1912, already paid $2,500, conceded to be interest in advance, upon which there should be allowed them interest at 6 per cent. from that date up to the date of the judgment, that is, in all, $2,711.16, and had not defendants also already, on November 25, 1912, paid $110 as the semiannual interest on the $2,750 mortgage, upon which a like rate of interest should be allowed them from that time up to the date of judgment, or in all $115.64, and had not defendants also paid, on December 21, 1912, $1,572.22 as interest on the debt, upon which should be allowed 6 per cent. interest up to the date of the judgment, or in all, $1,642.64, making the total of interest paid by defendants in advance $4,469.44, being an overpayment of interest on the debt of $302.78, which should be credited thereon, leaving due on the principal loan $49,679.22, for which the court should have rendered judgment, plus 10 per cent. of that amount as an attorney's fee, or in all, $54,647.14.

**3. Usury—Set-Off of Usury—Foreclosure of Mortgage.**

The second mortgage upon the same property was made, executed, and delivered to

secure a loan of $15,750 for 3 years, with coupons thereto attached for $787.50 each, payable semiannually, with interest at 10 per cent. per annum. $750 was deducted from the principal at the time of the loan, and retained as interest paid upon the loan, and the first coupon was paid when due. Upon failure to pay the second coupon, the mortgagee exercised his option, and accelerated the payment of the loan and foreclosed, whereupon he was met with a plea of usury, which the court sustained, and set off the debt with $4,650, and rendered judgment in favor of the mortgagee, foreclosing his mortgage for the balance of the debt. On appeal by the mortgagors, assigning that the court erred in allowing a set-off for said amount only, held, construing Rev. Laws 1910, sec. 1005, that the $750 deducted from the principal at the time the loan was made and the $787.50 paid to take up the first interest coupon, or in all, $1,537.50, was interest paid on the loan, which left 2 years and 6 months' interest charged and unpaid, or $3,937.50, twice the amount of which, or $7,875, the mortgagors were entitled to have set off against the mortgaged debt, and not $4,650, as found by the trial court, leaving due thereon $7,875, plus 10 per cent. thereof as an attorney's fee, for the payment of which the mortgage should be foreclosed.

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Action by the Union Trust Company and the Union Trust Company, as trustee, against D. N. Garland and wife and J. C. Barr and wife on notes, and to foreclose a mortgage or deed of trust, and against one Silas Rowland, in which W. J. Walker intervened by answer and cross-petition. Decree for foreclosure, and for foreclosure by defendant Walker against defendants Garland and Barr, and such defendants bring error. Reversed and remanded, with directions.

See, also, 49 Okla. 654, 154 Pac. 676.

Stuart, Cruce & Cruce and L. D. Mitchell, for plaintiffs in error.

Ames, Chambers, Lowe & Richardson, for defendants in error.

TURNER, J. On January —, 1913, in the district court of Oklahoma county, Union Trust Company, a corporation, and the same Company as trustee, defendant in error, sued D. N. Garland and Inez, his wife, J. C. Barr and Ollie, his wife, plaintiffs in error, upon their 50 certain real estate gold notes of $1,000 each, made, executed, and delivered by them on May 25, 1912, to the Union Trust Company as trustee, all of which later came into its hands as registered holder. Two of said notes were payable December 1, 1912, 3 June 1, 1913; 2 December 1, 1913; 3 June 1, 1914; 2 December 1, 1914; 3 June 1, 1915; and 35 June 1, 1918. Each was made pay-

able to bearer or to the registered holder thereof, and provided for 6 per cent. interest per annum from June 1, 1912. Each further provided that the principal sum, "if not paid at maturity, shall bear interest at the rate of 10% per annum with annual rests after maturity until paid." At the same time plaintiff sued to foreclose a mortgage or deed of trust, in favor of the Union Trust Company as trustee, given by defendants upon a certain 10-story building in Oklahoma City to secure the payment of said notes. Among other things the petition alleged that, by reason of defendants' failure to pay the two $1,000 notes falling due December 1, 1912, plaintiff had elected to declare the whole debt due and payable, pursuant to the terms of the mortgage, which provides that in case default should be made in the payment of any coupon or notes thereby secured when the same became due, the trustee may, upon certain conditions (complied with), declare the principal of all notes thereby secured immediately due and payable; that, although its lien was prior to that of all others upon the property, one Silas Rowland claimed some interest therein inferior to that of plaintiff's lien, and prayed judgment for the full amount of the mortgage debt, to wit, $50,-000, with interest at 10 per cent. per annum and an additional 10 per cent. as an attorney's fee, and for a foreclosure of the mortgage, and that Rowland's interest in the property, if any he have, be declared inferior and subject to the lien of the mortgage.

For answer defendants, after denying every allegation in plaintiff's petition, except such as were specifically admitted, as a second defense, admitted the execution and delivery of the notes and mortgage sued, and alleged that the consideration for same was the loan of $50,000; that plaintiff, through its officers and agents, knowingly and wrongfully and with intent to violate the laws of the state, with reference to the charging of usurious interest, charged, reserved, and received from defendants, and that defendants paid plaintiff $2,500 cash at the time of the loan as interest for the use of said money from the date of the execution of said instruments until December 21, 1912, and executed to plaintiff a note for $2,750, bearing 8 per cent. interest, and payable one year thereafter, and made interest payments amounting to $1,572.22, or in all $6,822.22, being interest exacted during that time at the rate of 27 per cent. per annum; and that by reason of such usurious charge defendants were entitled to set off against plaintiff's demand twice said sum so reserved, to wit, $13,644.44. For further answer defendants submitted a calculation to show that on the face of the

evidence of debt and the commission note of $2,750, the usury reserved and charged was $12,830, and prayed that double said amount, or $25,660, be set off against plaintiff's demand. For further answer they allege for the reason that, by the terms of the bonds and the coupons thereto attached, there is reserved and charged 6 per cent. interest per annum upon the bonds before maturity and 10 per cent. thereafter until paid, the same are usurious because, they say, this increase of 4 per cent., was for the "detention" of money in contravention of the statute, and entitled defendants to set off against the debt twice the amount thereof. By amendment a count was added to the petition, praying judgment on the note for $2,750 and for a foreclosure of the mortgage by which the same was secured; said note having matured since the beginning of the suit. For reply, after a specific denial of all new matter set up in the answer, the Union Trust Company, after reciting the fact of the loan and the dates upon which it was payable, said:

"That at the time of the execution of the notes or bonds and deed of trust securing the payment of said indebtedness the said defendants above named paid to plaintiff the sum of $2,500, and executed and delivered to the Union Trust Company their note for $2,750. with interest at 8 per cent. per annum, payable on May 25, 1913, secured by a second mortgage upon said property, and that plaintiff is still the owner and holder of said note, and same has never been transferred or negotiated and is unpaid.

"Plaintiff further states that the sum of $2,500, which was paid to plaintiff at the time of the making of said loan, the sum of $2,750 which the defendants promised to pay plaintiffs on May 25, 1913, together with the several interest payments alleged to have been made by the said defendants to plaintiff, was a part of the interest which accrued upon said loan for the entire time said loan run, and was not payment of interest for the dates set forth in the answer and cross-petition of said defendants, and was a part performance of the entire contract.

"Plaintiffs further state that under the terms of said contract there would have accrued upon the $2,000 payable December 1, 1912, at 6 per cent. the sum of $62; that there would have accrued on the $3,000 which became due on June 1, 1913, the sum of $165; that there would have accrued on the $2,000 which became due and payable on December 1, 1913, the sum of $182; that there would have accrued on the $3,000 which matured on June 1, 1914, at 6 per cent. the sum of $302; and there would have accrued on the $3,000 due and payable on June 1, 1915, at 6 per cent. the sum of $543; and that there would have accrued on the sum of $35,000, which became due and payable on June 1,

1918, at 6 per cent., the sum of $12,635; that there would have accrued on the note for $2.750 which matured May 25, 1913, at 8 per cent., the sum of $220, which with the $2,500 paid at the time of the execution of the papers and the $2,750 evidenced by said note due May 1, 1913, would have amounted in the aggregate to $18,740, being all of the interest which the plaintiffs exacted and which the defendants contracted to pay on said loan.

"Plaintiffs further state that under the law they were entitled to collect interest at 10 per cent. per annum; that the interest which would have accrued on $2,000 maturing December 1, 1912, at 10 per cent., would have amounted to $103.33; that plaintiffs are entitled to collect on the $3,000 which matured on June 1, 1913, at 10 per cent., the sum of $305; that plaintiffs are entitled to collect on the $2,000 due December 1, 1913, at 10 per cent., the sum of $303.30; that plaintiffs are entitled to collect on the $3,000 due December 1, 1914, at 10 per cent., the sum of $605; that plaintiffs are entitled to collect on the $2,000 due December 1, 1914, at 10 per cent., the sum of $503.33; that plaintiffs are entitled to collect on the $3,000 due June 1, 1915, at 10 per cent., the sum of $905; that plaintiffs are entitled to collect on the $35,000 due June 1, 1918, at 10 per cent., the sum of $——, amounting in the aggregate to $23,-783.32, being the maximum amount of interest which plaintiffs were entitled to collect under the law.

"Plaintiffs further state that under the terms of said contract as hereinbefore stated, defendants were only required to pay the sum of $19,740, and the plaintiffs were entitled to collect under the law the sum of $23,-783.32, there being a difference of $4.043.32, which plaintiffs were entitled under the law to collect, and which amount is less than the defendants agreed to pay or the plaintiffs exacted from the said defendants, and by reason thereof said loan was not usurious"

—and asked that the same be foreclosed. Then came one W. J. Walker and intervened, and for answer and cross-petition, after denying generally the allegations set forth in the petition, set up a mortgage of $15,750 on the premises made, executed, and delivered to Silas Rowland by Garland and wife and Barr and wife on May 25, 1912, and by said Rowland, for value and before maturity, assigned to him, and prayed that the same be decreed a first lien on the property and foreclosed. And after Garland and wife and Barr and wife had answered and pleaded that the same was usurious and Walker had joined issue by general denial, and Barr had pleaded that he, pending the suit, had been adjudged a bankrupt, and Rowland had disclaimed, there was trial to the court upon the issue of usury joined between the Union Trust Company and Garland and wife and Barr and wife in the enforcement of plain-

tiff's $50,000 mortgage, whereupon the court on October 20, 1913, found, from the evidence and the agreed statement of facts, the facts substantially to be: That on May 25, 1912, defendants, to secure a loan of $50,000, executed the notes and mortgage sought to be foreclosed; that the notes were for $1,000 each, payable as pleaded, with interest at 6 per cent. per annum, payable semiannually; that when the mortgage was executed, defendants paid plaintiff, as a commission for making the loan, $2,500, and also executed to plaintiff the promissory note of $2,750 declared on; that each of the $1,000 notes contained:

"Said principal sum if not paid at maturity shall bear interest at the rate of 10 per cent. per annum with annual rests after maturity until paid,"

—and the mortgage reserved to the mortgagee the right to accelerate the payment of the debt, as pleaded, if any installment of the principal or interest was not paid when due; and also contained the words "appraisement waived," and provided for an attorney's fee, etc. The court further found plaintiff to be the owner; that the mortgage was duly recorded; that default had been made in the payment of the two notes of $1,000 each, due December 1, 1912; that plaintiff had duly declared the default and its election to declare the entire debt thereby secured due and payable; that plaintiff was entitled to a foreclosure thereof, and, that there was due and owing thereon $52,666.67, with interest thereon at 6 per cent. per annum from that date, October 20, 1913, together with $5,266.66 as an attorney's fee, for all of which he gave judgment and decreed the same to be the first lien upon the property. The court further found that when defendants executed to plaintiff their promissory note for $2,750 they also executed to plaintiff a mortgage on the same property to secure its payment as pleaded; that said mortgage contained the words "appraisement waived," and also provided for 10 per cent. additional as an attorney's fee in the event of foreclosure; that the same was duly recorded; that plaintiff was entitled to foreclose it, and that there was due and owing thereon $2,953.08, with interest at 6 per cent. per annum from October 20, 1913, together with $295.30 as an attorney's fee, for all of which he gave judgment and decreed the same to be a second lien upon the property; that the title of the defendants and Walker in and to the mortgaged property was inferior and subject to the plaintiff's judgment, and so ordered, adjudged, and decreed; and that the property be sold to satisfy the debt. Thereafter, on the issues tried to the court upon the issue of usury joined between the defendants and Walker in his

suit to foreclose his mortgage, the court found that there was usury in that transaction to the extent of $4,650 only, and that Walker was entitled to recover $11,100 only thereon, together with $1,500 as an attorney's fee and to have his mortgage foreclosed, and so adjudged and decreed, to reverse which defendants only bring the case here, and contend the court erred in holding that there was no usury in plaintiff's mortgage, and not in holding there was usury in the Walker mortgage, but in holding that $4,650 only was the extent of the usury therein.

39 Cyc. 918, 919, says that, in order to constitute usury, there must be an unlawful intent; the subject-matter must be money or money's equivalent; a loan or forbearance; the sum loaned be absolutely or conditionally repayable; and that there must be an exaction for the use of the loan of something in excess of that allowed by law. Rev. Laws 1910, sec. 1002, reads:

"Interest is a compensation allowed for the use or forbearance, or detention of money, or its equivalent."

Section 1004 prescribes that:

"The legal rate of interest shall not exceed six per cent. in the absence of any contract as to the rate of interest, and by contract parties may agree upon any rate not to exceed ten per cent. per annum. Said rates of six and ten per cent. shall be, respectively, the legal rate and the maximum contract rates of interest."

And section 1005:

"The taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section shall be deemed * * * usury."

There was no usury in this transaction. In Metz v. Winne, 15 Okla. 1, 79 Pac. 223, the court said in the syllabus:

"The law of this territory prohibits the taking or contracting for any higher rate of interest than 12 per cent. per annum, and makes it unlawful to deduct more than one year's interest from the loan in advance, but it is not unlawful to compute the interest for the entire time the loan is to run, and contract to pay such sum in installments of such sums and at such times as the parties may by contract agree."

This is what was, in effect, done here, and the question is: Computing the interest for the entire time the loan had to run, does the interest reserved exceed the legal rate? If so, the loan is usurious; otherwise not. In other words, the test is as laid down in J. I. Case, etc., Co. v. Tomlin et al., 174 Mo. App. 512, 161 S. W. 286. There, referring to Taylor v. Buzard, 114 Mo. App. 622, 90 S. W. 126, the court said:

"In that case the test of usury in a contract is said to be 'whether it would, if performed, result in securing a greater rate of profit on the subject-matter than is allowed by law.'"

Accepting, then, the concession that the $2,500, or, rather, to be exact, the $2,325 (the difference is immaterial) deducted from the principal sum at the time the loan was made and the $2,750 note executed at the same time, together with interest thereon as reserved therein ($110 of which, being semiannual interest thereon, was paid when due), were for interest paid and charged and not a commission, as found by the court, applying the test stated, the contract, if performed, would have exacted of defendants interest as follows:

| Principal. | From What Date | Date Due | Time | | Amt. of Interest |
|---|---|---|---|---|---|
| $ 2,000 | 6-1-12 | 12-1-12 | 6 mo. | 6% | $ 60 |
| 3,000 | 6-1-12 | 6-1-13 | 1 yr. | 6% | 180 |
| 2,000 | 6-1-12 | 12-1-13 | 18 mo. | 6% | 180 |
| 3,000 | 6-1-12 | 6-1-14 | 2 yr. | 6% | 360 |
| 2 000 | 6-1-12 | 12-1-14 | 30 mo. | 6% | 300 |
| 3,000 | 6-1-12 | 6-1-15 | 3 yr. | 6% | 450 |
| 35.000 | 6-1-12 | 6-1-18 | 6 yr. | 6% | 12,600 |

Total interest provided for in the bonds_____$14,220
Interest collected in advance_____ 2,325
Note for additional interest_____ 2,750
Interest on $2,750 note for 1 year at 8 per cent. _____ 220

Total interest collectible under the contract _____$19,515

Or a little over 8 per cent. interest on the loan, which, of course, was not usurious. In Georgia Southern R. Co. v. Trust Co., 94 Ga. 306, 21 S. E. 701, 32 L. R. A. 208, 47 Am. St. Rep. 153, it is said:

"A calculation will show that if the bonds ran to full maturity, as contemplated, the lender of the money would not receive, in the aggregate, as much as 8 per cent. per annum for the use of the money, although at the beginning he put out on each bond only $850, and at the end received $1,000. The $150 added to the 6 per cent. interest annually received would not amount to as much as 8 per cent. per annum on $850 for the full term. That the bonds by their terms bore interest from a date previous to their delivery makes no difference, because, notwithstanding this fact, the gross amount of interest for the full term would not have been equal to 8 per cent. per annum. So the original contract, if the bonds ran 40 years, was not usurious; and it does not appear that they contained any stipulation which would prevent a fair and legal adjustment of the interest between the parties in case the bonds became due earlier because of a default in paying interest. Nor does it appear that in providing for the maturity of the bonds in case of such default, there was any device or contrivance to cover up usury."

This was the method adopted to determine whether there was usury in the loan sought to be collected in Metz v. Winne, supra. In that case Metz, on August 27, 1901, borrowed of Winne $600 for 10 years and executed, payable to him, a promissory note for that amount, together with 10 interest coupon notes for $42 each. At the same time he also executed, payable to Winne, a promissory note for $150, due September 1, 1902, together with another note of $30, due at the same time. The $600 note and coupon notes were secured by a first, and the $150 and $30 notes were secured by a second, mortgage on the same property. Winne assigned the $600 note and interest coupons; and, when Metz failed to pay the first coupon when due, Winne took it up and sued on it, as well as on the $150 note, and to foreclose his second mortgage, which contained a provision that, in the event the mortgagor failed to pay any interest note secured by the first mortgage, the holder of the second might pay it, and the sum so paid should become a lien secured by the second, and the holder thereof entitled to an immediate foreclosure. Defendant pleaded usury; and in holding such there was not, Burford, C. J., said:

"The facts specially pleaded in the answer are that the defendants borrowed from Winne $600, payable in 10 years, with interest at 7 per cent., and that they executed 1 note for $600 and 10 notes for $42 each, representing the interest for the 10 respective years; that they also executed the note for $150, which was for additional interest, and aver that such sum was usurious and excessive. A mere matter of mathematical calculation is sufficient to refute the conclusion of the pleader. Parties may contract for a rate of interest not to exceed 12 per cent. The interest on $600 for 10 years at 12 per cent. is $720. The interest contracted for as shown by these notes is as follows: Ten notes, $42 each, $420; 1 note, $30 and 1 note $150, total $600, which is $120 less than the maximum interest the mortgagee was entitled under the law to deduct. It is argued that the law does not permit more than 1 year's interest to be deducted in advance. Section 848, Wilson's Stat. 1903, provides: 'The interest which would become due at the end of a term for which a loan is made, not exceeding one year's interest in all, may be deducted from the loan in advance if the parties thus agree.' But it is not alleged or contended that any portion of the interest claimed was deducted from the loan in advance. On the contrary, it appears from the pleading that the mortgagors borrowed and received $600, and executed interest notes, payable in installments after the first year. If they comply with the contract, they will have the use of the principal sum for the period of 10 years, and the presumption is that they will do so. We know of no law that will prevent a borrower from paying all the interest on a loan at the end of 1 year or in such installments as he may desire and the parties may agree upon.

so long as the person making the loan does not exact over 12 per cent. per annum, nor deduct more than 1 year's interest from the amount of the loan in advance. The courts do not undertake to make contracts for individuals, nor to relieve them from burdensome obligations voluntarily assumed and entered into."

To be sure, in that case no interest was taken out of the principal sum, while here $2,325, or less than 5 per cent., was so taken, and a note executed for $2,750 payable in 1 year. But this distinction makes no difference, for, referring to the Winne Case, Kane, J., in Covington v. Fisher, 22 Okla. 207, 97 Pac. 615, said:

"It is true that in that case the interest was not taken out of the principal sum, but the case holds that the mortgagee had a right to contract for the payment of a part of the interest covering the entire period of the 10-year loan at the end of the first year, and for such a sum to be paid at that time as would be largely in excess of the maximum legal rate. if computed only for the period of a year; but the court holds it proper to make the computation for the entire time, and the principle to be drawn from the opinion is that the contracting for the payment of interest in advance does not make the transaction usurious."

We are therefore of opinion that there is no merit in defendants' contention, in effect, that the $2,325 deducted as interest in advance, together with the exaction of a note for $2,750, with interest thereon at 8 per cent. for a year, and the further exaction of $1.572.22 as interest on the loan up to December 21, 1912, or in all, $6,822.22, was the exaction of usury at the rate of some 27 per cent. for a loan of $50,000 from the date of the mortgage up to that time. This for the reason that, although such rate seems excessive, computed, as it is, for a part only of the time the loan had to run, the same is not excessive when those payments are spread out over the entire time the contract, if performed, had to run, as we have seen.

But before passing this $50 000 mortgage, it might be well to add that, because plaintiff, under the contract, by the exercise of its option accelerating the maturity of the loan, was entitled to demand and receive more than the amount of the loan, with legal interest to the time the loan was called, it does not follow that the plea of usury should prevail. On this point 29 Am. & Eng. Encyc. of Law, 508, says:

"A provision by way of penalty accelerating the maturity of a loan on default in payments by the borrower will not necessarily render the loan usurious, though through the exercise of such option the lender may be entitled at law to demand the return of more than the amount lent with legal interest. Thus, where in consideration of a loan an obligation is taken for an amount as principal greater than the amount of the loan, but the interest stipulated therefor is less than the highest legal rate, so that if the contract is carried out according to its terms no more than the principal with legal interest will be paid. a provision that upon default in the payment of the interest the entire principal shall become due at the option of the lender will not render the transaction necessarily usurious, though upon such default and the exercise by the lender of his option more than the amount lent with legal interest to the time when the loan is called will be payable. And the same rule has been applied where installment notes were given for the principal and interest for the full term of the loan."

In Goodale v. Wallace et al., 19 S. D. 405, 103 N. W. 651, 117 Am. St. Rep. 962, 9 Ann. Cas. 545, the court said:

"It is further contended by the appellants that as there was a stipulation in the mortgage that if the mortgagors should fail to pay any portion of the above-mentioned sum, either principal or interest, promptly at the times they should become due, the whole sum —both principal and interest—should at once become due and collectible, therefore the contract was clearly usurious, as the whole amount of the principal of the notes would become due and payable upon default in the payment of the first note; but this contention is untenable, for the reason that such stipulation is in the nature of a penalty from which the mortgagors could relieve themselves by a prompt payment of the notes when due. Webb on Usury, sec. 120; 2 Am. & Eng. Ency. Law, p. 468. The author in speaking of this class of cases. says: 'So if the provision for the payment of excessive interest is dependent on contingency which the borrower may avoid by paying the debt, with legal interest, the loan will not be deemed usurious.' State v. Elliott, 61 Kan. 518, 59 Pac. 1047; Tholen v. Duffy, 7 Kan. 405. A similar clause is frequently inserted in mortgages, but the stipulation has never been held as constituting a contract for the payment of usurious interest, so far as our researches extend."

There is no authority holding the contrary, so far as we know. By this we do not mean to intimate that plaintiff, had it sued therefor, which it did not, was entitled to recover in this action on the interest coupons not due at the time the trustee accelerated the maturity of the principal debt and foreclosed therefor. On the contrary, on this point, we mean to say that recovery upon those coupons could not be had for the reason that the moment the principal debt and interest, accrued up to the time to which the maturity of the debt, was accelerated, are paid, the remaining undue interest coupons are discharged. This is in keeping with authority (Dugan et al. v.

Lewis et al., 79 Tex. 246, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332; R. R. Co. v. Mer. Trust Co., 94 Ga. 306, 21 S. E. 701; Goodale v. Wallace, supra; Moore et al. v. Cameron et al., 93 N. C. 51), and is plaintiff's theory of the case. It is also carried into the judgment of the court, who permitted a recovery for the principal debt only, together with interest thereon at 6 per cent. from December 1, 1912, or the time when the first two notes fell due, up to the date of the judgment. There was no error in this, so far as the question of usury is concerned, and the judgment must stand, provided, of course, the court did not err in the amount of interest due on the loan.

But, say defendants, this contract is usurious because it provides for interest on the principal sum at 6 per cent. per annum before maturity, or from June 1, 1912, until paid, and, if not paid at maturity, 10 per cent. thereafter, with annual rests until paid. And it is contended by counsel for defendants, not that this increased rate of interest is a penalty and unenforceable, but that it renders the contract usurious because, they say, this increase of 4 per cent. was for the "detention" of money in contravention of the statute, supra. Not so. Being an increase in the maximum legal rate only, the contract was a valid contract for the payment of interest. 39 Cyc. 953, denominates such excess of interest as a penalty, but adds:

"Whether such penalty for the nonperformance of the contract is enforceable or not, all authorities are agreed that the contract is not usurious, but remains a valid and enforceable obligation against the debtor."

And so we have held in a case where, as here, the increase was the extent of the maximum legal rate only. National Life Ins. Co. v. Hale, 54 Okla. 600, 154 Pac. 536, L. R. A. 1916E, 721. In that case this court, speaking through Collier, C., held that where a promissory note drawing 5½ per cent. interest, payable semiannually, contained a clause providing that the rate should be increased to the maximum legal rate of interest, in the event of default in payment of either principal or interest at maturity, such increased rate was a valid contract for the payment of interest.

We said just now that the court did right in holding there was no usury in the $50,-000 loan, and that the judgment of the court in favor of plaintiff for $52,666.67 (principal and interest from December 1, 1912, the date the mortgagors defaulted in the payment of the two $2,000 notes, up to the date of the judgment) must stand unless the court erred in calculating the interest due on the debt up to that time. And this

he did for the reason that, as plaintiff, by the express terms of the evidence of debt, was only entitled to recover thereon 6 per cent. interest from June 1, 1912, until maturity (the 10 per cent. thereafter is not contended for), plaintiff was entitled to recover 6 per cent. only on the debt from that date until the date of the judgment, which, principal and interest, would be $54,166.66. And for this amount the court should have rendered judgment, less $2,500, conceded to be interest paid at the time the loan was made, with 6 per cent. interest thereon from May 26, 1912, to the date of the judgment, amounting, principal and interest, to $2,711.16, less also $110, paid as semiannual interest on the $2,750 mortgage, with interest thereon from November 23, 1912, at 6 per cent. per annum up to the date of the judgment, amounting, principal and interest, to $115.64, and less, also, $1,572.22, paid as interest on the debt, together with interest thereon at 6 per cent. per annum from December 21, 1912, to the date of the judgment, amounting, principal and interest, to $1,642.64, or in all, as interest already paid upon the loan, $4,469.44. And, as said sum exceeds the interest on the loan at 6 per cent. from June 1, 1912, to the date of the judgment by $302.78, the court should have applied that amount in reduction of the principal debt and rendered judgment in favor of plaintiff for $49,679.22, 10 per cent. of which should have been adjudged as an attorney's fee. And this is the judgment the trial court should have rendered.

In Miller v. Fergerson (Ky.) 47 S. W. 1081, the facts were that plaintiff sold defendant a certain lot for $1,120, and afterwards loaned him $650 from that time with which to erect a house upon the lot. As the debt aggregated $1,770, they counted 6 per cent. thereon for 5 years from April 24, 1894, making the principal and interest $2,301, and defendant gave plaintiff 60 notes therefor of $38.35 each, with interest from maturity, payable, respectively, July 1, 1894, and the first of each month thereafter. In the evidence of debt it was agreed that in case defendant defaulted in the payment of as many as 4 of the notes, plaintiff would have the right to treat them as all due and payable. The first one fell due and was paid; 13 fell due and were not paid. Whereupon plaintiff elected to treat them all due and sued to recover, not only on the 13 notes, but asked judgment on the remaining 46, with interest from the time the action was commenced until paid. The court rendered judgment for the full amount claimed. In reversing the case, the Supreme Court held that 6 per cent. upon the indebtedness up to the date of the judgment was all plaintiff was entitled to recover. In passing the court said:

"In the second place, although, as consideration for the land, the agreement between the parties to add interest to the principal sum of $1,120 was legal and permissible, still, as appellee, taking advantage of the misfortune of appellant, has come into a court of equity for enforcement of that agreement, at a time and in a manner not reasonably anticipated when it was made, he must consent to such judgment as, under the circumstances, a chancellor ought to render. In our opinion, accepting the answer as true, appellant is entitled to recover of appellee, in addition to $650, the aggregate of $1,120, and interest thereon at rate of 6 per cent. from date of the land sale until date of the judgment appealed from. Wherefore the judgment is reversed, and the case remanded for proceedings consistent with this opinion."

And so we hold that plaintiff was entitled to recover 6 per cent. on this debt from its inception to the date of judgment. And, as the trial court should have done, so we will do, that is, upon the undisputed facts, render such judgment as the trial court should have rendered, which is that plaintiff have judgment for $49.679.22, together with $4,967.92 as an attorney's fee, the judgment to draw interest as decreed by the court.

We said just now that plaintiff was not entitled to recover for the remaining interest coupons not due at the time the trustee declared the principal debt due and foreclosed therefor. This, we said, was for the reason that the moment the principal and accrued interest, up to the time of the acceleration of the maturity of the debt, are paid, the remaining undue · interest coupons are discharged. For the same reason, contrary to the holding of the court, plaintiff is not entitled to recover on its second mortgage of $2,750; for, like the undue coupons, having been executed to secure the payment of interest charged and unearned at the time of the acceleration of the maturity of the debt, it also was discharged. It is for this reason that plaintiff cannot recover on said mortgage, and not for the reason that said mortgage was a part of a scheme to exact usury, as contended by defendant. We are therefore of opinion that the court erred in rendering judgment on said mortgage, as stated, and in ordering it foreclosed.

We are therefore of opinion that, there being error as indicated in the judgment of the trial court in determining the amount due on the $50,000 mortgage of the Union Trust Company, the judgment foreclosing the same should be reversed and modified, and that the judgment foreclosing the $2,750 mortgage should be reversed, with directions to dismiss the suit as to it.

As to the judgment foreclosing the Walker mortgage, it is assigned that the court erred, not in holding that the same was usurious, but in holding that defendants were entitled to a set-off of $4,650 only on the mortgage debt. There is no dispute as to the facts. The evidence discloses that the mortgage on its face secured a loan of $15,750 for 3 years, with coupons thereto attached for $787.50 each, payable semiannually, with interest at 10 per cent. per annum; that $750 was deducted from the principal at the time of the loan, and retained as interest paid upon the loan; that the first coupon was paid when due; that Walker, the assignee of the mortgage, upon failure to pay the second, exercised his option· to accelerate the payment of the loan and foreclosed, whereupon he was met with a plea of usury, which the court found to be sustained by the evidence, and pursuant thereto set off the debt with $4,650, and rendered judgment in favor of Walker, foreclosing his mortgage for the balance of the debt, as stated. The governing statute, section 1005, supra, in full reads:

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section shall be deemed a forfeiture of twice the amount of interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm or corporation taking or receiving same, in an action in the nature of an action of debt, twice the amount of the interest so paid; * * * Provided, further, that before any suit can be brought to recover such usurious interest, the party bringing such suit must make written demand for return of such usury."

As stated in Miller v. Oklahoma St. Bank, 53 Okla. 616, 157 Pac. 767, the provisions of this section of our statute are substantially the same as section 5198 of the Revised Statutes of the United States, construing which, in Haseltine v. Central Nat. Bank, 183 U. S. 132, 22 Sup. Ct. 50, 46 L. Ed. 118, the court said:

"Two separate and distinct classes of cases are contemplated by this section: First, those wherein usurious interest has been taken, received, reserved, or charged, in which case there shall be 'a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon'; second, in case usurious interest has been paid, the person paying it may recover back twice the amount of the interest 'thus paid from the association taking or receiving the same.' While the first class refers to interest taken and received, as well as that reserved or charged, the latter part of the clause apparently limits the forfeiture to such interest as the evidence of debt carries with it, or which has been agreed to be paid, in contradistinc-

tion to interest actually paid, which is covered by the second clause of the section."

From which we learn that, if no interest on this loan had been paid, defendants would have fallen into the first class mentioned, and been entitled to set off against plaintiff's demand a sum equal to the entire interest which the mortgage carried; that is, interest on $15,750 for 3 years at 10 per cent. per annum, or $4,725. And, on the other hand, if all the interest called for by this evidence of debt had been paid, defendants would have fallen into the second class, and, had the mortgagee foreclosed for the principal sum, defendants would have nothing to set off, but would have been compelled to resort to an action in the nature of an action of debt to recover twice the amount of interest paid. All of which seems clear enough. But what shall we say when the facts are, as here, that the interest on the loan has partly been paid and part remains unpaid or charged? We say part has been paid, for the court, in effect, found that $750 was deducted from the principal at the time the loan was made, and that the same was interest and rendered the transaction usurious; and it is conceded that the first interest coupon of $787.50 was paid, or in all $1,537.50 was interest paid on the loan. As this left 2 years and six months interest charged and unpaid, does the statute mean defendants are entitled to set off twice the interest charged by the evidence of debt, that is, $4,725, and, in another action, in the nature of an action of debt, recover against the mortgagee twice the $1,537.50 interest paid? If it does, there would be a double recovery of the interest paid to the extent of the amount of the first coupon, for it is clear that that much of the interest paid would be merged in the set-off. Then, what does it mean? It means, in this case, that so far as the interest paid is concerned, twice that must be recovered in a separate action in the nature of an action of debt, leaving only, as a subject of set-off, twice the remaining interest of 2 years and 6 months charged, or twice $3,937.50, that is, $7,875, which, deducted from the principal debt of $15,750, leaves $7,875, for which the mortgage should be foreclosed, plus 10 per cent. of that amount for an attorney's fee, since defendants assign as error that plaintiffs should not have been allowed any attorney's fee at all. In the headnotes to the Haseltine Case, supra, it is said:

"Usurious interest paid in cash upon renewals of a note given to a national bank, and of all other notes of which it was a consolidation, cannot be set off in an action upon the note, as the remedy provided by U. S. Rev. Stat. Sec. 5198 [U. S. Comp. St. 1916, sec. 9759], where such usurious interest has been actually paid, viz., a recovery in an action in the nature of an action of debt, or twice the amount of the interest thus paid, is exclusive."

Which means that, as the remedy by separate action for the recovery of twice the usurious interest paid is exclusive, no part of it can properly be merged in a set-off of twice the interest which the evidence of debt carries, and that where, as here, both set-off and separate action should be employed to meet the situation, each should be employed to operate within its proper sphere. So far as the present application of this statute is in conflict with Miller v. Oklahoma State Bank, supra, the same is overruled.

There is no merit in the remaining assignments of error.

The cause is therefore reversed and remanded, with directions to modify the judgment and foreclose, pursuant to the views herein expressed. Let the costs of this appeal be equally divided between the Union Trust Company and the defendants Garland and Barr and the intervener Walker. All the Justices concur, except THACKER, J., who concurs in conclusion.

THACKER, J. (concurring). In no aspect of the loan contract in the instant case does there appear to me to be any taint of usury. And I concur in the conclusion reached in the opinion of the court that there is no usury in this contract. But, in concurring in this conclusion, I feel it my duty to dissent from the reasoning by which the contract is tested for usury and found to be within the law.

Under the statutes applicable to the instant case (Laws 1910, p. 253, the same being section 1005, Rev. Laws 1910, and section 915, Stat. 1890, the same being section 1007, Rev. Laws 1910), 10 per cent. per annum is nominally the highest rate of interest permitted by law; but, since the borrower may deduct interest in advance out of the loan for 1 year at the highest rate permitted, these statutes really permit a lender to charge interest at 10 per cent. per annum, plus interest at this rate upon the amount of interest so taken in advance. However, in this opinion, I shall, in deference to the statutes cited, at times speak of the amount actually delivered to the lender, plus the interest taken by the borrower in advance for the first year as the amount of the loan.

In this case, following the case of Metz et al. v. Winne, 15 Okla. 1, 79 Pac. 223, a test for usury is found by computing interest at the highest rate permitted by law upon the full amount loaned for the entire time for which the loan was made; and the fact that this method of computation does not

give even an approximately invariable result in limiting benefits that may be taken by lenders and burdens that may be imposed upon borrowers, except where interest is not taken before it could be earned by the amount loaned at the highest rate permitted by law, does not appear from the opinion of the court to affect the applicability of the same in any case.

In the Metz Case, where a loan of $600 for 10 years bore interest to the amount of $222, payable at the expiration of the first year, and to the amount of $42 payable at the expiration of each succeeding year, making a total of $600, the fact that interest at the highest rate of 12 per cent. on $600 would amount to $720 was considered a correct test, showing that the total of $600 called for as interest by the contract was free from the taint of usury. In that case the contract required the payment of $150 over and above the interest that could have been earned under the law at the expiration of the first year of the loan; and it must be obvious that this gave the lender and deprived the borrower of the benefit of an equal amount of the principal loaned, at least so long as this amount had not been actually earned as interest, over and above all other interest payments, by the amount originally loaned. It seems obvious that the loan of $600 in that case could not have earned so much as $720, in view of the times and amounts of interest called for by the contract, unless the question of benefit to the lender and burden to the borrower should be ignored in the test for usury; and to ignore benefits and burdens would seem to me to defeat the only purpose of the limit upon the rate of interest. The reasoning in the Metz Case, which is followed in the instant case, apparently leads to the conclusion that if the contract had required the borrower of the $600 to allow the lender to retain $72 as interest in advance at 12 per cent. for the first year of the loan, and further required the borrower to pay the lender the additional sum of $648 at the end of the first year, as unearned but anticipated interest for the remaining 9 years, thus making a total of $720 required to be paid as interest at the expiration of the first year of the loan, the contract would have been free from the taint of usury, notwithstanding the fact that the borrower had paid the lender at the end of the first year an amount equal to the entire amount of the original $600 loaned, plus $120, which would be 20 per cent. on that amount, to say nothing of the $600 to be paid at the end of the loan period. Under the test for usury applied in the Metz Case, and in the instant case, it appears that the contract now before the court might have required the borrower to allow the lender to

retain $5,000 as interest in advance, and to pay the latter at the end of the first year of the $50,000 loan the additional sum of $18,783.32, so that the borrower would have the benefit of a loan of only $45,000 for the first year and of only $26.116.68 for the remaining years of the loan, while the lender would get a correspondingly greater benefit than he would have received if no interest had been taken before it was actually earned by the loan.

If the reasoning of these cases is correct, and the same test is to be applied in all cases to which the same appears to be applicable from the reading of the opinions therein, it appears, for example, that the lender of $100 for 20 years might charge and collect $10 in advance, so that the borrower would only actually receive $90, and at the expiration of the first year, as unearned but anticipated interest, $190 more, making in all $200, which is more than twice as much as the amount actually loaned, and still hold the borrower's obligation to pay $100 at the expiration of the 20 years.

In the case of Fowler v. Equitable Trust Co., 141 U. S. 384, 12 Sup. Ct. 1, 35 L. Ed. 786, where the highest rate of 10 per cent. per annum allowed by the statutes of Illinois was charged on a loan for 5 years and where 3 per cent. of the same for the full term of the loan was taken in advance, the Supreme Court of the United States, in holding that the same was not usurious under the decisions of that state, said:

"It is to be observed that out of the principal sum loaned the trust company retained, by way of discount, what was claimed to be the present value of such amount as would pay, in advance, 3 per cent. of the stipulated interest for the whole period of the loan, 5 years. In view of this feature in the case there was much discussion at the bar as to whether it was permissible, in Illinois, for the lender to exact and receive interest in advance upon a loan made at the highest rate allowed by its laws. In view of numerous decisions of the Supreme Court of that state, it is not necessary to examine this question upon principle; for it is the settled doctrine of that court that the mere taking of interest in advance does not bring a loan within the prohibition of usury. In Goodrich v. Reynolds, 31 Ill. 490, 498 (83 Am. Dec. 240), it was said: 'The remaining plea sets up usury in this, that the interest was made payable semi-annually. It has long been settled such reservation is not usurious. The whole interest may be lawfully reserved in advance.' McGill v. Ware, 5 Ill. 21, 28; Mitchell v. Lyman, 77 Ill. 525, 529, 530; Brown v. Scottish-American Mortgage Co., 110 Ill. 235, 239; Hoyt v. Pawtucket Sav. Inst., 110 Ill. 390, 394; Telford v. Garrel,

132 Ill. 550, 554 (24 N. E. 573). Whether that doctrine would apply where the loan was for such period that the exaction by the lender of interest in advance would, at the outset, absorb so much of the principal as to leave the borrower very little of the amount agreed to be loaned to him we need not say. The present case does not require any expression of opinion upon such a point, for the interest reserved in advance on the loan to Fowler was only of 3 per cent. out of 10 per cent., and a reservation to that extent, it would seem, is protected by the decisions of the state court. The defense of usury, so far as it rests upon the fact that 3 per cent. of the stipulated interest was taken in advance by the lender, must therefore be overruled."

The Illinois rule, however, does not seem to be in accord with the rule generally followed, nor to be sound in principle; and the above intimation that a loan might not be regarded as usurious unless it was "for such period that the exaction by the lender of interest in advance would, at the outset, absorb so much of the principal as to leave the borrower very little of the amount loaned him" should be understood to be applicable only where the Illinois rule prevails, if there. In Law of Usury, by Webb, secs. 112-116, pp. 126-132, it is said:

"The question whether a contract calling for the payment of the highest legal rate of interest in advance is usurious or not is one upon which the authorities are not in harmony. The statutes upon the subjects of interest and usury do not ordinarily specify the particular time during the life of the loan or forbearance at which the interest shall be paid. Such statutes ordinarily provide that the rate of interest shall be a certain amount per 'annum'; and, while there is no additional provision that the interest shall be payable at the end of the year, or at the time of the maturity of the loan, if it be for a period less than one year, yet some of the courts have construed the statutes to so mean. In the Ohio case of Penn Mutual Ins. Co. v. Carpenter (40 Ohio St. 260), the court discussed the subject at some length, concluding that: 'A construction of the language of the statute as applicable to the rate of interest only, and not to the time of payment, which will permit the payment of interest at periods shorter than the time a note has to run, furnishes, in our view, no reasonable ground for the advancement of interest before it accrues or is earned. * * * In Ohio, express statutory authority has been given in many instances to banks and other corporations to reserve interest in advance. But the fact that such authority has been expressly granted by statute furnishes the strongest implication that it is denied to all others.' In other states of the Union, the contrary rule prevails, and it is held that the taking of interest in advance is not usurious. Thus in Illinois, it is held

that if a borrower of $3,000, for 1 year, at 10 per cent. interest, receives but $2,700, for which he gives his note for $3,000, with 10 per cent. interest after maturity, the transaction is free from usury. In the early Indiana case of Cole v. Lockhart (2 Ind. 631) the court reviewed the cases which had been decided at that time, and declared that the taking of the highest rate of interest in advance was not usurious.

"Why there should have been such profligate expenditure of learning, consumption of words, and vexation of mind over a question of which there is but one just solution is difficult to understand. Interest is compensation for the use of money. If the amount of the interest is deducted in advance, it is plain that the borrower never uses the interest so paid. He does not receive the full amount of his loan. He cannot use that which he was to receive unless it is paid to him. He cannot employ money kept out of his possession. It renders the borrower no service, performs no purpose, pays no debts, buys no property, satisfies no wants, and accomplishes nothing, as far as the borrower is concerned, for which he should be compelled to pay interest. If mathematical accuracy, combined with justice, should be aimed at, it seems that the interest should be paid at maturity, together with interest upon the interest then due, for one-half the time of the loan.

"Where the interest is taken in advance for a period less than 1 year the Supreme Court of Wisconsin, in the case of Tallman v. Truesdell (3 Wis. 443), makes the following distinction: 'It is contended that the payment of interest semiannually at the rate of $12 for the loan or use of $100 for 1 year; or, in other words, $6 at the end of 6 months, virtually gets interest on the $6 so received during the remaining 6 months of the year. The statute is silent as to the time when the interest may be paid, and only prescribes the rate for a specified term. It is difficult to distinguish clearly between the case when a loan of $100 is made for 6 months at the rate of 12 per cent. per annum, and at the expiration of the time the lender receives his money back with $6 interest, and the case where a loan of $100 is made for 1 year at the rate of 12 per cent. per annum, and at the end of 6 months $6 should be paid as interest, and at the expiration of 1 year, $106 are paid. It is true that the borrower loses the interest on the $6 which he paid at the end of 6 months, for and during the remaining 6 months of the year, but it is not true that he pays interest on the $6 to the lender. The lender may or may not get interest on this sum, but if he does, he does not get it from the borrower, since it is not a contract with him for a greater rate than 12 per cent. That a distinction between the cases like the foregoing has been attempted is certainly true, but it has never been rendered sufficiently clear for practical purposes. Where interest is taken in advance the case is different. If the

lender reserves his 12 per cent. at the time of the loan, the borrower gets $88, for which he promises to pay $100 at the end of the year. In this case he actually pays to the lender interest on the $12 reserved; that is, the $12 which he pays at the time of the loan is equal to $10.56 interest on the $88 actually received, and $1.44 at the rate of 12 per cent. on the $12 reserved. This would clearly exceed the rate prescribed by the statute. But we do not think it was the design of the statute to make any deduction from the rate of 12 per cent. agreed upon, in cases where the term for the loan is less than a year, or where the interest is agreed to be paid oftener than once a year.

"As stated in a preceding section, if the amount of interest and commissions collected does not exceed the amount of interest allowable by the highest legal rate, there is no usury. So where the amount of interest collected in advance, together with the interest upon it, at the highest lawful rate, does not aggregate more than would be allowed by law as interest upon the principal, there can be no usury. Upon this theory it is held that there is no usury where the bond of the debtor bears no interest, but includes the amount of the debt with interest upon it to the time of the maturity of the bond."

In the editorial note, commencing at page 1156, to the case of Ellis v. Terrell, 109 Ark. 69, 158 S. W. 957, 37 Ann. Cas. 1153, it is said upon the authority of a large number of cases there cited:

"The practice, originating in the custom of banks and those dealing in commercial paper in the course of trade, of taking interest in advance on short-term loans, though admitted to be usurious in principle, has become a recognized legal right; and, in the absence of statutory prohibition, the courts are unanimous in upholding its legality where the loan or forbearance is for a period of time of one year or less."

In idem it is said:

"In Purvis v. Frink, 57 Fla. 519, 49 So. 1023, the court construing a statute providing that a debtor shall not be required to pay a greater sum than the actual principal sum received, with 10 per cent. interest per annum, held that the reservation of interest from the principal of the note in quarterly amounts made the transaction usurious. In some jurisdictions it has been held that since the right to take interest in advance originated in the custom of banks and those dealing in commercial paper, such right must be confined to commercial transactions."

The decisions from the states holding this are cited in connection with the last above statement. In idem it is further said:

"Where the loan or forbearance is for more than 1 year, the decisions are not in accord as to whether taking interest in advance for the full period of time will constitute usury. The majority of cases support the holding of the reported case that to take the highest rate of interest in advance for the entire period of time is usury."

In support of this last proposition the editor cites in addition to the case annotated the following cases: Marsh v. Martindale, 3 B. & P. (Eng.) 154; Fowler v. Equitable Trust Co., 141 U. S. 384, 12 Sup. Ct. 1, 35 L. Ed. 786; Branch Bank v. Strother, 15 Ala. 51. In the case of Smith et al. v. Parsons et al., 55 Minn. 520, 57 N. W. 311, it was held:

"When a 'bonus' is exacted by the lender as a consideration for making a loan, it is, in computing, for the purpose of determining whether the loan is usurious, to be deducted as of the date when it is payable. If payable at the time of the loan, it is to be deducted from the principal as of the date of the loan, and the remainder, or what the borrower receives and retains, is to be taken as the basis for computation."

In that case, where the loan was of $20,000 for 5 years, with a specification that the same should bear interest at the rate of 7 per cent. per annum, and where the borrower contracted to pay and paid the lender as a bonus or commission for making the loan 5 per cent. on said $20,000 and rendered the lender services of the value of $500, the court said:

"These considerations furnished a basis for making a computation to ascertain if the interest or compensation for the use of the money actually to be received and retained by the borrower was at the rate of more than 10 per cent. per annum on that amount or those amounts. The interest on the several amounts, at that rate, from the dates of the advances to the time of paying the last installment, November 4, 1884, was about $930. By the terms of the notes there was payable on and before October 1, 1884, as interest, $1,400. It is a mode of computation which defendants cannot complain of, to deduct the bonuses from the principal $20,000 as of the date of November 4, 1884, and calculate the interest on the remainder, $18,500, at the rate of 10 per cent. from that date to the maturity of the notes, add the $930 to that, and to their sum and the principal retained by the borrower, $18,500, aggregating $26,553, and compare that with what by the terms of the notes and mortgage the borrower was to repay to the lender, $20,000 principal, and $7,000 interest. The usurious character of the transaction is apparent."

In the case of McCall v. Herring, 116 Ga. 235, 42 S. E. 468, where the borrower contracted to pay $1,600, with interest thereon at the rate of 7 per cent. per annum, but actually received from the lender only $1,520 because of the fact that the lender's agent

retained $80 from the principal as his commissions, the court said:

"The contentions raised by the demurrer, and insisted on as reasons sufficient to justify the court in striking the plea necessarily lead to the determination of the question whether the averments of the plea, when taken to be true, characterize the transaction as a usurious one. If they do, the court erred in striking the plea, because the deed relied on by the plaintiff as the basis of the establishment of her lien would be void. If they do not, the court committed no error, and the validity of the security deed is unaffected. In the case of Clarke v. Havard, 111 Ga. 242, 36 S. E. 837, 51 L. R. A. 499, Presiding Justice Lumpkin, in the course of a very able opinion which he delivered in that case, and in which he considered the rulings made by this court in a number of cases preceding it, said: "A money lender cannot, in this state, lawfully contract for or reserve any greater rate of interest than 8 per cent. per annum, and the prohibition is just as strong against doing so indirectly as it is against doing so openly and without pretense. * * * ' Accepting the rulings made in that case as being sound, our next inquiry, in order to fully meet the demurrer, is whether when the $80 retained by the agent of the lender is added to the interest contracted to be paid, it appears that the aggregate of these sums is greater than the highest rate of interest allowed by law to be charged. The borrower gave his note for $1600, and agreed to pay interest thereon at the rate of 7 per cent. per annum, $112. The commission retained amounted to $80. The borrower, according to his plea, received $1,520 interest, upon which sum at the rate of 8 per cent. per annum, the highest allowed by law in this state, is $121.60. This would make the amount of interest to maturity, 5 years, $608. Any greater sum than $608 received as interest for this time on this amount would be usury. But, according to the averments of the plea, the interest contracted to be paid, seven per cent. on $1,600 for five years, was $560, which, added to the $80 retained as commissions, aggregates $640 (not including in this calculation any interest on the $80) as interest on the $1,520 received by the borrower. Thus it is clear that the borrower would pay and be liable to pay $32 more than the highest legal rate during the period of the loan for the sum borrowed. And the result is the same if we treat as chargeable to the borrower the $16 which, in one part of his amended plea, he admitted the plaintiff was entitled to receive from him for preparation of abstract, etc. These figures are conclusive to our minds that, when the principles ruled in the Clarke Case, supra, are applied to the facts set out in the plea and by demurrer admitted to be true, the transaction represented by the promissory note, which is the foundation of the action in the present case, was usurious.

"Counsel, however, contend that if the $80 paid by the borrower as commissions is to be treated as interest reserved, then the transaction would not be usurious, for the reason that this amount which was deducted from the face of the note must be treated as the payment of interest pro tanto in advance; that $80 represents 1 per cent. on the amount contracted to be loaned for the full term, 5 years; and that as the balance of the interest contracted to be paid amounts to 7 per cent. the whole rate of interest, when so treated, aggregates 8 per cent., and is within the lawful limit, and that the payment of 1 per cent. of interest in advance under these circumstances does not render the transaction usurious. An examination discloses that the adjudicated cases are somewhat in conflict on the question whether a reservation of the highest legal rate of interest in advance renders a loan transaction usurious, but a majority of those which we have had opportunity to consult draw a distinction, in this respect, between what is termed a long and a short loan. Counsel for defendant in error argues that on principle no such distinction exists, and we agree with him. We are unable to see any reason why on principle the reservation of the highest rate of interest in advance on short-term loans does not render the contract usurious. * * * Mr. Webb, in his treatise on Usury, sec. 111, declares, on the authority of a large number of adjudicated cases, cited in note 3, page 126: 'That it is not usury to discount commercial paper in the ordinary course of business is absolutely settled. This rule of law arose out of custom, and does not depend upon statute.' Mr. Tyler, in his work on Usury, p. 298, declares that: 'The courts uniformly hold, at the present day, that the interest for ordinary paper having the usual time to run, such as is the practice by banks, may be taken in advance, by way of discount, and not subject the paper to the taint of usury. It is obvious, however, that the length of time the paper has to run must have a controlling effect upon this question. If the note has a short time to run, the interest may be taken in advance; whereas the time may be so lengthened out as to make the taking of the interest, in advance, palpably usurious.' Whether, then, there is, in principle, any difference in such transactions in taking the highest legal rate on short and long time loans is not now a question with which we are materially concerned; for undoubtedly, according to the authorities generally, the proposition that taking the highest rate of interest in advance does not render the transaction usurious may be considered settled on short loans. Indeed this court, in the case of Mackenzie v. Flannery, 90 Ga. 590, 16 S. E. 710, ruled that 'to take 8 per cent. interest in advance by way of discount on short loans, in the usual and ordinary course of business, is not usurious.' And in the case of Union Savings Bank v. Dottenheim, 107 Ga. 614, 34 S. E. 221, Mr. Justice

Cobb said: 'It is also well settled that a contract providing for the payment of the highest lawful rate of interest in advance is not usurious, though many of the courts which recognize this as an established rule express doubts as to whether upon principle such practice should be allowed to prevail.'

"Just where the line is to be drawn, so as to determine what is a short and what a long term loan, does not seem to have been settled. The period of 1 year seems to have been fixed in the case of Tallman v. Truesdell, 3 Wis. 443. But the rule that interest at the highest legal rate may be taken in advance on long loans without rendering the contract usurious is not established by the authorities generally. There are a number of cases so ruling, in many of which the rulings are made on statutes. Certainly there are no decisions of this court which so declare, and we are not aware of any authority which binds us so to rule. While we accept the doctrine almost universally applied to short loans, in the absence of controlling authority we decline to extend that rule in the case of long loans. On principle it cannot be done, nor ought it to be. for reasons which are tersely stated by Mr. Webb in his work cited supra, 113, in the following language: 'Interest is compensation for the use of money. If the amount of the interest is deducted in advance, it is plain that the borrower never uses the interest so paid. He does not receive the full amount of his loan. He cannot use that which he was to receive, unless it is paid to him. He cannot employ money kept out of his possession. It renders the borrower no service, performs no purpose, pays no debts, buys no property, satisfies no wants, and accomplishes nothing, as far as the borrower is concerned, for which he should be compelled to pay interest.' While the language of Mr. Justice Cobb in the Dottenheim Case cited above is very broad, it was not. as we understand it, meant to include interest on long-time loans, but evidently referred to the rule, which seems so generally to prevail, that the highest rate of interest may lawfully be taken in advance on short loans. If it be contended that this language referred to long as well as short loans. it may be replied that that question was not one which was passed on by the court in that case. If the contention of the defendant in error is sound, then it would lead to this result: If a loan of $500 were made for a term of 5 years at the rate of 8 per cent. per annum, then at the time of making the loan the lender could reserve the interest for the whole period, and give to the borrower only $300 in satisfaction of his contract; if such a loan were made for 10 years, the law would be fully met by the lender handing to the borrower $100 and accepting his obligation to pay him $500 at the end of the period; if it were made for 15 years, instead of the borrower receiving anything from the lender, the former would not only get nothing, but would pay the lender $100 for the privilege of executing to him his promissory note."

Interest is not the compensation allowed by law or fixed by the parties for an obligation to permit the borrower to use or detain money or for the future forbearance on the part of the lender to demand the same; but, as stated in Black's Law Dictionary, it is defined as follows:

"Interest is the compensation allowed by law or fixed by the parties for the use or forbearance or detention of money. Civ. Code Cal. sec. 1915; Williams v. Scott, 83 Ind. 408; Kelsey v. Murphy, 30 Pa. 341; Williams v. American Bank, 4 Metc. (Mass.) 317; Beach v. Peabody, 188 Ill. 75, 58 N. E. 680."

The right to the compensation allowed by law or fixed by the parties "for the use or forbearance or detention of money" logically arises out of and follows, and does not precede, such "use or forbearance or detention of money"; and, accordingly, loan contracts for more than 1 year usually call for the payment of interest after and not before it is earned.

If a contract does not require the payment of interest before it was earned by a loan, and this definition was kept in mind, a voluntary payment of money in advance to meet and cover unearned interest as it accrues in the future would easily be seen to be more in the nature of a return of that much of the principal debt than a payment of interest in the first instance, though taking on the character of a payment of interest as the latter accrues.

In the absence of a contract to the contrary, and as a general rule under the provisions in contracts, interest is not due and payable until it has been earned by the loan, except when taken in advance, as authorized by section 915, Stat. 1890 (section 1007, Rev. L. 1910) for not to exceed 1 year; and, as aptly stated in a note to Story v. Livingston, 13 Pet. 359, 10 L. Ed. 200, the rule for casting interest in this country when partial payments are made is as follows:

"The rule for casting interest, when partial payments have been made, is to apply the payment, in the first place, to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes towards discharging the principal, and the subsequent interest is to be computed on the balance of principal remaining due. If the payment is less than the interest, the surplus of interest must not be taken to augment the principal; but interest continues on the former principal until the period when the payments, taken together, exceed the interest due, and then the surplus is to be applied towards discharging the principal, and interest is to be computed on the balance.

State of Connecticut v. Jackson, 1 Johns Ch. (N. Y.) 13 [7 Am. Dec. 471]; Van-Benschooten v. Lawson, 6 Johns Ch. (N. Y.) 313 [10 Am. Dec. 333]; Williams v. Houghtaling, 3 Cow. 86, and note; Hicks v. Atkins, 4 Mass. 103; Dean v. Williams, 17 Mass. 417; Fay v. Bradley, 1 Pick. 194; French v. Kennedy, 7 Barb. (N. Y.) 452; Hosack v. Rogers, 9 Paige's (N. Y.) 461; Smith v. Shaw, 2 Wash. C. C. 167 [Fed. Cas. No. 13-107]; Dunlop v. Alexander, 1 Cranch C. C. 498 [Fed. Cas. No. 4,166]; Russell v. Lucas, Hempst. 91 [Fed. Cas. No. 12,156A]."

Also see: Woodward Baldwin & Co. v. Jewell et al., 140 U. S. 247, 11 Sup. Ct. 784, 35 L. Ed. 478. The act of June 17, 1910, (Laws 1910, p. 253; section 1005, Rev. Laws 1910) reads as follows:

"The taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section shall be deemed a forfeiture of twice the amount of interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm or corporation taking or receiving same, in an action in the nature of an action of debt, twice the amount of interest so paid: Provided, such action shall be brought within two years after the maturity of such usurious contract; Provided, further, that before any suit can be brought to recover such usurious interest, the party bringing such suit must make written demand for return of such usury."

Section 915, Stat. 1890 (section 1007, Rev. Laws 1910), reads as follows:

"The interest which would become due at the end of a term for which a loan is made, not exceeding one year's interest in all, may be deducted from the loan in advance if the parties thus agree."

If, as seems indisputable, the purpose of the statutory inhibition against the taking of more than a specified amount of interest is to limit the burden that may be imposed upon the borrower, and the corresponding benefits that may be taken by the lender, we should look to the essence of the transaction and to the net result in benefit to the lender and burdens to the borrower, with due regard to the terms of the contract in respect to times and amounts of interest payments and to the rights of the parties to contract for the payment of actually earned interest at such times as they desire without affecting the question, for a standard test.

I think the statutory limitation upon the burden the lender may impose and the corresponding benefit he may take contemplates the casting of interest according to the par-

tial payment rule hereinbefore stated, treating interest paid in advance of accrual above the product of a computation at the highest legal rate to the date of payment as sterilizing or destroying the interest-producing power of an equal amount of the principal until such advance interest could be actually earned by the loan at the highest rate of interest permitted by law.

Taking the contract in the Metz Case for use in making an illustration, it appears to me that a correct test for usury might be found in the fact that the $600 loaned could have earned, at the rate of 12 per cent. per annum, $72 at the end of the first year, when $222 that must be treated as interest was paid; that this payment, being $150 over and above the interest that could have been lawfully earned up to that time, sterilizes and destroys the interest-producing power of an equal amount of the $600 loaned, so that only $450 of the same could bear interest until the next interest-paying time, at the end of the second year of the loan, when, at the highest rate permitted. it could produce $54; that, as $54 is $12 more than the $42 called for by the contract at that time, this deficiency should be covered by applying $12 of the $150 excess already in the hands of the lender to the same, with the result that this excess would be reduced to $138 and a corresponding amount of barren principal would become interest producing, so that, for the third year $462 of the $600 would bear interest; that at the end of the third year, when another installment of $42 as interest was due under the contract, this $462 could produce at the highest rate of interest permitted by law $55.44, which would be $13.44 more than the contract required to be paid at that time, so that the unearned interest in the hands of the lender would be reduced to $124.56 for the next year and $475.56 of the $600 loaned would bear interest during the fourth year, and so on until, at the end of the ninth year, nearly all of the excess in the hands of the lender would be earned and absorbed, and nearly all of the loan of $600 would begin to bear interest again. As a result of this method of computation, the $600 loaned could have earned at 12 per cent. per annum, $72 the first year, $54 the second year, $55.44 the third year, $57.05 the fourth year, $58.85 the fifth year, $60.82 the sixth year, $63.08 the seventh year, $65.60 the eighth year, $68.44 the ninth year, and $71.61 the tenth year, making a total of $626.89. It appears to me that this method of computation gives due consideration to the proportions of the contract, that is, to the times of payment and the amounts required to be paid by the same, in testing for usury. It takes into account the fact that

the borrower was required to pay $150 at the end of the first year of the loan as interest that had not been earned; and it also takes into account the fact that each subsequent installment of interest called for by the contract was less than could have been earned at that time within the law.

Although I think the above method of computation gives a correct test, I am not quite as certain of this as I am of the fact that the standard adopted in the instant case and in the Metz Case is fundamentally wrong.